445 A.2d 1255

**COMMONWEALTH of Pennsylvania,**

v.

**Joseph EVANS, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 5, 1981.

Filed May 21, 1982.

Robert S. Robbins, Philadelphia, for appellant.

Gary Tennis, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before BROSKY, POPOVICH and MONTGOMERY, JJ.

POPOVICH, Judge:

Appellant, Joseph Evans, was initially convicted of the summary offense of harassment (18 Pa.C.S.A. § 2709) in the Municipal Court of Philadelphia County. The sentence entered consisted of a $50.00 fine. Thereafter, appellant sought relief via the Post-Conviction Hearing Act (19 P.S. § 1180–1 *et seq.*) and was granted a trial *de novo* in the Court of Common Pleas before the Hon. Charles L. Durham. In the bench trial, appellant was again found guilty of harassment and, after the denial of post-trial motions, sentenced to serve thirty to ninety days imprisonment starting December 19, 1980.[1] This appeal followed. Appellant now complains that: 1) the evidence was insufficient to warrant his conviction; 2) the trial court erred in admitting evidence of prior acts attributed to the accused in regard to the complainant's cause of action; and 3) the sentence imposed was not proper under the circumstances. We affirm in part, vacate in part and remand for proceedings consistent with this opinion.

According to the evidence presented at trial, the following facts were adduced: In April of 1974, the complainant, Barbara Cohan-Duffy, was employed at Horizan House in

---

1. Appellant has yet to start serving the sentence imposed, for the trial court "let him remain on . . . bail [—$1,500—] pending the filing of a notice of appeal." (N.T. 12/19/80, at 165) It is to be noted that as a condition of bail, the trial court ordered the appellant "not to see [the complainant], [not to] go around where she was, or try to get in touch with her or contact her." (N.T. 3/9/81, at 5) On March 9, 1981, the trial court, pursuant to the Commonwealth's petition, conducted a hearing and found that appellant had violated a condition of his bail by going to the complainant's place of employment and causing her to sob hysterically before the police could be summoned to arrest him. As a result of appellant's conduct, the conditional bail was revoked and new bail was set at $15,000.00. (N.T. 3/9/81, at 20)

Philadelphia, Pa. As part of complainant's duties, she ran a social services program that was open to all persons. Appellant attended some of the programs and, in the course thereof, met the complainant.

As to the incident in question, the complainant testified that it occurred very late in the evening of August 5, 1975. The scenario began with the doorbell to Ms. Duffy's apartment being rung. The complainant answered by using the intercom and a person identifying himself as the appellant "began to say some pretty horrible things to [her]." (N.T. 7/11/80, at 15) Although the witness could not recall the exact words used,[2] she did remember that the person stated "[she] had a sexual relationship with one of the client's at Horizan House, and was very abusive over the intercom." *Id.* at 16. The police were immediately called and arrested the appellant at the scene.

The victim also testified how, during April of 1974, she received numerous notes and letters affixed with the appellant's signature. For example: a note written on a telephone memorandum slip, dated 4/6/74 and signed "Joe Evans," was left in her mailbox at Horizan House. The note read in part, "you are full of shit. Don't think I'm not aware of your jive.... Don't be surprised at what I say to you from now on." *Id.* at 22 and 23. The same modus operandi was used with regard to a note dated 5/25/74; it contained the following relevant language, "You are a bitch. You are arrogant, rude and a one-sided busybody.... You ain't shit, Barb. You want to be a man so bad. Take care you good for nothing whore." *Id.* at 23 and 24. Furthermore, Ms. Duffy recalled how the appellant would watch her apartment at all hours of the day and night from the parking lot located across the street from her residence. *Id.*

2. This lapse of memory can be attributed to the fact that the case did not come to trial until July of 1980. The delay between the original Municipal Court trial and the trial *de novo* was created by appellant's failure to properly pursue his appeal. This, in turn, lead to the filing of a Post-Conviction Hearing Act petition by the appellant on June 6, 1977. The June 6th petition was amended on November 19, 1979; relief was granted on February 14, 1980, in the form of a new trial.

at 26–27. Specifically, on June 9, 1975, around 5:30 PM, Ms. Duffy was walking home with a co-worker when appellant started following the two and began yelling, "Fuck you Cohan, I'm going to strangle you when I get ahold [sic] of you . . . ." *Id.* at 35. Such surveillance occurred on another occasion when the complainant was in the company of her boyfriend, and only when appellant was threatened by the boyfriend did he cease.

Ms. Duffy went on to testify how the appellant repeatedly attempted to contact her (on June 23, 24 and 26 of 1975) by ringing her doorbell. In fact, during the daylight hours of June 27th, a rock was thrown through Ms. Duffy's living room window, and, when she looked out to see who had thrown the object, she observed "Mr. Evans smiling up at [her]." *Id.* at 39. After this, Ms. Duffy intensified the security around her apartment, never left the house alone, and, in fact, ultimately moved out of the building. The other witness testifying on behalf of the Commonwealth corroborated Ms. Duffy's version of this protracted course of activity by the appellant.

When appellant took the stand, he admitted knowing the victim and characterized her accounting as "just all empty allegations." (N.T. 7/25/80, at 99) Although appellant did not deny calling Ms. Duffy on the intercom, he stated that it occurred but once, and then it was only "to let her know that [he] understood the reason why she levied these charges of harassment against [him], that they were not legitimate charges, they were just to cover up the fact that [she] was having [an] affair with [a] client at Horizan House." *Id.* at 101.

■ Having set forth the facts, this Court is now required to view the evidence in the light most favorable to the Commonwealth. Moreover, we must accept as true all evidence, together with all reasonable inferences therefrom, upon which the lower court could properly have based its verdict. Also, a mere conflict of testimony does not render the verdict insufficient. *See Commonwealth v. Dolan,* 287

Pa.Super. 202, 429 A.2d 1171 (1981); *Commonwealth v. Bender*, 248 Pa.Super. 504, 375 A.2d 354 (1977).

The statute violated provides in relevant part:

"A person commits a summary offense when, with intent to harass, annoy or alarm another person:

\* \* \* \* \* \*

(2) he follows a person in or about a public place or places; or

(3) he engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose." 18 Pa.C.S.A. § 2709.

Initially, we observe that Section 2709(3) specifically proscribes "a course of conduct or repeated [ ] . . . acts" which are offensive to the complaining party, i.e., there must be evidence of a *repetition* of the offensive conduct. *Commonwealth v. Duncan*, 239 Pa.Super. 539, 363 A.2d 803 (1976) (appellant's repeated entreaties of the complainant to allow him to perform cunnilingus established a "course of conduct," and his pleas and actions seriously annoyed a person of average sensibilities). In interpreting the aforegoing, this Court, in *Commonwealth v. Schnabel*, 236 Pa.Super. 280, 344 A.2d 896 (1975), held that the Commonwealth failed to establish that appellant-lessor engaged in a "course of conduct" of harassment by the *single act* of cutting the complainant-lessee's water hose. In so doing, it is important to note that the *Schnabel* Court embraced the definition that " ' "course of conduct" is more than an isolated verbal or physical act. It is a pattern of conduct composed of same or similar acts repeated over a period of time, however short, which establishes a continuity of purpose in the mind of the actor.' " (Citation omitted) *Id.*, 236 Pa.Super. at 283, 344 A.2d at 898. Such definition undermines the appellant's contention that the reviewing court is precluded from examining the testimony elicited regarding matters that occurred prior to August 5, 1975, the date of the complained of conduct.

■ It cannot be discounted that the appellant did not deny the late-night conversation with the complainant. Rather, he merely refutes that his actions were done with an intent to harass. Thus, the introduction of evidence of the prior acts was relevant and admissible, inasmuch as it "tended to prove that the alleged offense [ ] . . . . constituted part of an overall scheme of harassment of the prosecutrix." *Commonwealth v. Schowalter,* 231 Pa.Super. 278, 283, 332 A.2d 456, 458 (1974); *see also Commonwealth v. Wable,* 382 Pa. 80, 114 A.2d 334 (1955); *Commonwealth v. Boulden,* 179 Pa.Super. 328, 116 A.2d 867 (1955). Moreover, the evidence of the prior acts was germane to establish an element of the offense, i.e., criminal intent. *Cf. Commonwealth v. Bond,* 261 Pa.Super. 311, 318, 396 A.2d 414, 417 (1978) (evidence of extortion attempt in a trial for robbery was inadmissible, since "intent was not at issue" and the two offenses were entirely *"dis* similar actions").

■ In the instant case, we believe that the Commonwealth established beyond a reasonable doubt the following three elements necessary to sustain a conviction under 18 Pa.C.S.A. § 2709(3): 1) intent to harass, annoy or alarm another person; 2) conduct which has "no legitimate purpose"; and 3) conduct which alarms or seriously annoys the average person. In other words, we hold that the trier of fact could reasonably infer from the appellant's offensive activity, in light of all the attendant circumstances, that he intended to harass the victim and that his actions served no legitimate purposes. *Commonwealth v. Duncan, supra.*

■ Appellant next asserts that the admission of testimony relating to prior acts or conduct between the complainant and he was prejudicial error. Since this Court reviewed the admissibility of such evidence in disposing of appellant's sufficiency argument, we need not reexamine it at this point. However, we note that such issue, although raised at trial, was not submitted in appellant's post-trial motions, despite the trial court's advising him of the consequences if he failed to do so. (N.T. 9/17/80, at 129) Therefore, the issue would be considered waived. *See, e.g., Commonwealth*

*v. Vitacolonna,* 297 Pa.Super. 284, 443 A.2d 838 (1982); *Commonwealth v. Stump,* 281 Pa.Super. 317, 422 A.2d 187 (1980); *Commonwealth v. Smith,* 258 Pa.Super. 148, 392 A.2d 727 (1978).

■ Appellant's remaining contention concerns the legality of the Common Pleas Court judge issuing a greater sentence (30 to 90 days imprisonment) after his trial *de novo* than that entered by the Municipal Court judge ($50.00 fine). In particular, appellant complains that "whenever a court makes such a[n increased] sentence, adequate reasons must be stated of record which would justify the court in doing so in the eyes of a reviewing authority." (Appellant's Brief at 8) We agree.

Recently, this Court, in *Commonwealth v. DeCaro,* 298 Pa.Super. 32, 444 A.2d 160 (1982), had occasion to discuss the issue posed by the appellant here. In *DeCaro,* the accused was convicted in Philadelphia's Municipal Court of drug charges and was sentenced to two years probation and ordered to pay a fine. However, DeCaro, after obtaining a new trial in the Court of Common Pleas, was found guilty and sentenced to a term of imprisonment. In responding to DeCaro's claim that the imposition of the increased sentence by the trial judge was error, we stated:

"[T]here is no defect in the Common Pleas judge having imposed a greater sentence than that which was imposed by the Municipal Court judge, *if the statutory and case law sentencing procedures were complied with.*

Appellant challenges the sentence imposed, claiming that it is excessive.... It is well-settled law that the sentence imposed upon a convicted defendant is within the broad discretion of the sentencing judge. *See Commonwealth v. Martin,* 466 Pa. 118, 351 A.2d 650 (1976); *Commonwealth v. Campolei,* 284 Pa.Super.Ct. 291, 425 A.2d 818 (1981). The sentencing judge must, however, comply with Pa.R. Crim.P. 1405, with the standards of the Sentencing Code, 42 Pa.C.S.A. § 9721(b), with the factors in 42 Pa.C.S.A. § 9725, and also with the requirements of *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977), giving reasons on the record for his choice of sentence.

The transcript of the sentencing hearing shows that the judge took into consideration the Sentencing Code guidelines and gave reasons for his choice of sentence. He also notified appellant of her right to appeal to this court within thirty days. He neglected, however, to inform appellant of her right to file a motion to modify sentence within ten days, as he is required to do by Pa.R.Crim.P. 1405(c)[.]" (Emphasis added) (Footnotes omitted) *Id.,* 298 Pa.Super. at 44, 444 A.2d at 166.

In *DeCaro,* we remanded to allow the appellant the opportunity to file a motion for modification of sentence *nunc pro tunc,* since the trial court failed to inform her of her right to do so. Instantly, the record reveals even more of a deviation from the sentencing guidelines than occurred in *DeCaro.*

On December 19, 1980, a sentencing hearing was conducted. At that time, counsel for appellant importuned the court not to send his client to jail, for he felt that "[a]ny short-term incarceration would serve no justifiable purpose." (N.T. 12/19/80, at 151) Counsel suggested that a sentence of probation be imposed, with the proviso that appellant be placed under psychiatric supervision for a period of 90 days. The Assistant District Attorney disagreed, contending that appellant, because of his prior record, had been placed on probation three times already, and there were no signs of an appreciable change in appellant's behaviour. Furthermore, when the court noted that the appellant was characterized in the pre-sentence report as being in a state of "good" remission, the Commonwealth's attorney responded that such behaviour modification did not negate the fact that in February and March of 1980, some 5 years after the incident, appellant had commenced contacting the complainant. The Assistant District Attorney went on to state *her opinion* as to why a period of probation would be unwarranted in appellant's case. However, before counsel had completed her argument, the court interjected, "I have heard enough[,]" "30 days to 90 days." *Id.* at 159. The remaining record, except for the court informing the appellant of his right to appeal the judgment within 30 days, is devoid of

any evidence of: 1) *the lower court's reasons for the sentence imposed* ; 2) the appellant being informed of his right to file motions challenging the propriety of the sentence; and 3) the ten-day limit within which such motions must be filed. *See* Pa.R.Crim.P. 1405 and 42 Pa.C.S.A. §§ 9721 and 9725.

As this Court has stated in the past, in discussing non-compliance with the dictates of *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977):

> "The fact that testimony was proffered at the hearing did not dispense with the requirement that the court state its reasons for the ... sentence [ ]. *'Testimony* ... and the contents of a presentence report, cannot constitute a statement of *reasons*; they rather constitute only the beginning of the process by which the court formulates its statement of reasons.' (Emphasis in original) *Commonwealth v. Wicks, supra*, 265 Pa.Super. [305] at 313, 401 A.2d [1223] at 1227 [ (1979) ]." *Commonwealth v. Bryner*, [285] Pa.Super. [305], [309] n. 2, 427 A.2d 236, 238 n. 2 (1981); *accord Commonwealth v. Walters*, [287] Pa.Super. [53], 429 A.2d 716 (1981) (a police officer's testimony on the "circumstances of the offense" cannot substitute for the trial court's failure to articulate its reasons for the sentence imposed).

Thus, based on the preceding, the Assistant District Attorney's statement of reasons for the imposition of a term of imprisonment *vis-a-vis* a period of probation will not be accepted in lieu of the lower court's statement of *its* reasons for incarcerating the accused. *Commonwealth v. Pauze*, 265 Pa.Super. 155, 158, 401 A.2d 848, 849 (1979) (MONTGOM-ERY, J.) (an appellate "court cannot substitute the prosecution's rationale for that of the sentencing court for to do so would be pure speculation."). Consequently, given the dearth of facts in the present case, we cannot effectively discuss appellant's claim that the sentence was excessive. *See Commonwealth v. Bryner, supra*, 285 Pa.Super. at 309 n. 3, 427 A.2d at 238 n. 3. Therefore, we vacate the judgment of sentence and remand to allow the lower court an opportunity to articulate its reasons for the imposition of total

confinement. Additionally, at such hearing, the appellant is to be advised of *all* of his rights attendant to said proceeding. *See* Pa.R.Crim.P. 1405.

We affirm in part, vacate the judgment of sentence and remand for proceedings consistent with this opinion. Jurisdiction is retained by this Court.