## Commonwealth v. Small and Wiley

*James J. Jacobs Jr., assistant district attorney,* for the commonwealth.
*Walter C. Pruchnik Jr.,* for defendant.

COFFROTH, *S.J.,* August 5, 1986—These are two consolidated appeals by defendants from the verdicts of the District Justice Roush finding them guilty of the summary offense of harassment under Crimes Code §2709(3) which provides:

"A person commits a summary offense when, with intent to harass, annoy or alarm another person: . . . (3) he engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose."

The two citations issued state the specific conduct or acts charged against each defendant in identical language:

"Defendant engaged in picket duty at Lion mine and along with other picket did shine a spotlight in the eyes of Edward Walker who was driving into the

mine causing Walker to drive over nails damaging tires."

## EVIDENCE

The alleged victim, Edward Walker, a non-union miner, testified that on his way to work at the mine of Lion Mining Co., in Jenner Township, this county, he arrived at the entrance road to the mine between 3:30 - 4:00 a.m.; it was dark and two UMWA pickets were stationed there, one of whom was defendant Wiley. As Walker was making the turn from the legislative route to the mine road, defendant Wiley turned a spotlight on and shined it through the driver's window of Walker's car and upon his face from about 15 ft. away as Walker drove between 10 and 20 miles per hour; the light was shone on his face only for an instant but after he passed, the light was then continuously played on the rear of his vehicle, causing continual reflections from the rearview mirror back into the driver's face, all the way down the mine road to the mine, a distance of about 1,000 ft.; this was aggravating and annoying to Walker but did not cause him to lose control of his car or cause harm in any way. Walker also testified that the same sort of annoyance by spotlight by mine pickets had occurred at other times during this strike when he entered the mine, but those pickets were not identified. Walker had run over some roofing nails, which later caused him several flat tires, when on the legislative route, before turning into the mine road and before being confronted with the spotlight. He was unable to identify the other picket with Wiley.

Denny Wiley, defendant Wiley's brother, also a non-union miner, went to work at the mine a little later that morning and saw three pickets at the mine road entrance, identified one of them as his

brother, was unable to identify the other two; and although the spotlight was not shone on his face, as he made the turn onto the mine road, the light was shone on the rear of his car the whole way down to the mine, causing reflections from the rearview mirror into his face; although the light did not impair his driving, it was very aggravating and annoying to him, but he was unable to say which of the pickets used the light on him.

State Police Officer Hudak also testified that he had later seen both defendants at the scene, or nearby, among the pickets later that morning.

Defendants and other defense witnesses testified that Wiley was not present on the day in question; Small admitted that he was present and had a spotlight, but he and the other defense witnesses stated that it was not shone on any person or cars, but was used only for light in making a listing of the cars entering the mine according to make, model and color.

## DISCUSSION

We first note the language of the citation, quoted ante, that defendants " . . . did shine a spotlight in the eyes of Edward Walker. . . causing Walker to drive over nails damaging tires." From this and the evidence, we draw the following conclusions: (1) defendants are not charged with spotlight harassment of the witness Denny Wiley, only with harassment of Walker, (2) the commonwealth has failed to prove that shining the light caused Walker to drive over nails damaging tires because the evidence is clear and uncontradicted that the light was shone on him only after he had driven over nails, and (3) the commonwealth has proved beyond a reasonable doubt that Wiley shined the light on Walker as he described it at the time and place in question. Thus,

the only remaining questions are: (1) whether the shining of the light by Wiley in the manner described constitutes harassment in violation of Crimes Code §2709(3) and, if so, (2) whether Small is also responsible for Wiley's harassment of Walker.

*Part I, Section 2709(3) - Defendant Wiley*

This section of the Crimes Code, quoted earlier in this opinion, requires proof beyond a reasonable doubt that defendant engaged in conduct which (1) was a course of conduct, or repetition of acts, (2) alarms or seriously annoys another average person, (3) serves no legitimate purpose, and (4) was done with intent to harass, annoy or alarm the other person.

Commonwealth counsel argues that all four elements have been proven against Wiley; defense counsel contends that none of the four elements has been proven. We agree with the commonwealth for the following reasons:

(1) It is true that a single isolated act, as distinguished from several acts in a course or repetition of conduct, is not sufficient under the express language of section 2709(3). *Commonwealth v. Evans,* 299 Pa. Super. 529, 534, 445 A.2d 1255 (1982); *Commonwealth v. Duncan,* 239 Pa. Super. 539, 543, 363 A.2d 803 (1976); *Commonwealth v. Schnabel,* 236 Pa. Super. 280, 344 A.2d 896 (1975); compare *Galella v. Jacqueline Onassis,* 353 FS 196 (DC NY, 1972), 487 FS 986 (CA 2, 1973). As stated in *Schnabel,* supra, 236 Pa. Super. at 284, a course or repetition of conduct " ' . . . is a pattern of conduct composed of same or similar acts repeated over a period of time, however short, which establishes a continuity of purpose in the mind of the actor.' "

In this case, there was more than the single act of shining a light for an instant in Walker's face; the spotlight was steadily played upon the rear window of his car, producing repeated reflections of light in his face, as he drove down the mine road, a clear course or repetition of conduct as contemplated by the statute.[1]

(2) It is also clear that such repeated acts of distraction with light were seriously annoying to the car driver as he testified, indeed were potentially dangerous and alarming; moreover, such annoyance is not merely the subjective reaction of an unusually or specifically sensitive person, but is such as would seriously annoy an average or normal driver under the circumstances. See *Commonwealth v. Evans,* supra, 299 Pa. Super, at 535; *Commonwealth v. Maggs,* 28 D.&C.3d 343, 346 (1983).

(3) It is also clear that this sort of conduct serves no legitimate purpose, and can serve only to alarm or annoy. Defense counsel contends that since the picketing was lawful,[2] the pickets have a legitimate interest in identifying those who crossed the picket line and in the dark to use a light to do so. Even if we should assume (without deciding) the legitima-

---

1. Although the comonwealth argued that similar use of the spotlight by other union pickets toward Walker on other occasions consitituted a course of conduct, this prosecution is against defendants Wiley and Small only and there is no evidence that either of them was present or participated on other occasions. Compare *Commonwealth v. Evans,* supra, in which the court held that evidence of prior acts of harassment toward the victim by defendant were admissible. Yet, the evidence of other similar acts on other occasions by other pickets in the same labor dispute is not irrelevant, see Part II of this opinion.

2. Considerable litigation took place in this court concerning lawfulness of the picketing in this strike, resulting in injunctive relief at the suit of the mine operator, not here involved. See 250 Civil 1985, Shaulis, *J.,* 512, A.2d 729 (1986).

cy of identification by union members of those crossing their picket line, the repeated use of the light on the rear window of the car did not serve that purpose at all; nor was shining the light in a driver's face necessary for that purpose; use of the light on the rear license plate alone, or on other identifying parts of the car or driver without seriously annoying him or distracting his attention from vehicle operation, would accomplish identification if that were the true purpose.[3] It must be remembered that the ordinary and primary purpose of picketing by workers is to persuade others, both the public and other workers, that their strike against the employer for improved wages and working conditions is just and reasonable, and that those others should therefore aid the strike by withholding their patronage and labor from the employer during the strike and thereby develop economic coercion upon the employer to bargain in good faith on the issues raised. Success of the strike thus may depend on being able effectively to impair the employer's business operation during the strike. But the right to picket is based on the right to persuade by free speech, and includes no right to coerce by force, intimidation, or the threat thereof, or by other conduct such as harassment which violates the law. See CJS, Labor Relations §§280-281; PLE, Labor §303. In such cases, the law states the rules of the contest, which the courts as umpire must impartially uphold and apply equally to all sides. Hence, "legitimate purpose" within the meaning of the harassment statute requires not only a lawful purpose but lawful means of accomplishing it.

---

3. Although defense witnesses denied use of the spotlight on license plates, the schedule for the pickets on this job instructs the pickets to keep count of "scabs" everyday, and if they are unknown to take license numbers.

(4) From the foregoing, and from the nature of the conduct and the attendant circumstances, it is clear that the annoyance was motivated by the antagonism inherent in union/non-union conflicts and was pursued with intent to harass and annoy. Intent is provable by circumstantial evidence of words and conduct. See *Commonwealth v. Gregory,* 267 Pa. Super. 103, 108, 406 A.2d 539 (1979); *Commonwealth v. Evans,* supra, 299 Pa. Super. at 535; *Kolcun Estate,* 42 Somerset L. J. 218, 240 (1983). A person of sound mind may be and is ordinarily held to know and to intend the natural, probable and expectable consequences of his voluntary conduct. See *Commonwealth v. Daynarowicz,* 275 Pa. 235, 238 (1922); *Commonwealth v. O'Searo,* 466 Pa. 224, 239, 352 A.2d 30 (1976). Here, Wiley knew and understood that playing the spotlight on the rear window of Walker's car as it drove down the road would harass, annoy, and possibly alarm his non-union foe; and that was its purpose, to discourage him from crossing the picket line and going to work at the mine.

Under all the credible evidence, we must find Wiley guilty of harassment for violating Crimes Code §2703 (3).

*Part II, Defendant Small*

Small is also charged with shining a spotlight in the eyes of Walker; however, unlike defendant Wiley, there is no evidence that Small physically shined the light on Walker, and this is conceded by the commonwealth. But the commonwealth contends that Small's participation as Wiley's accomplice in the harassment of Walker is evidenced by the facts that he was one of the pickets on duty when Walker drove to work on the morning in question, was present when Wiley caused the harassment to Walker by spotlight and necessarily knew of

it, was a partner with Wiley in the undertaking to identify non-union workers during the strike and to discourage such workers from going to work at the mine, and indeed also possessed a spotlight at the time. We agree.

An accomplice to crime is equally guilty with the person who committed, it, if his conduct comes within the definition of "accomplice" contained in Crimes Code §306(c) which provides:

"(c) Accomplice defined.—A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

(i) solicits such other person to commit it; or

(ii) *aids or agrees or attempts to aid such other person in planning or committing it;* or

(2) his conduct is expressly declared by law to establish his complicity. (emphasis added).

The emphasized subsection is the applicable portion. It seems clear that Small was aiding or attempting to aid Wiley in the purpose of the picketing — to discourage non-union employees from working at the mine, and to do so by annoying them with light as they drove into the mine, and doing so with the intent of promoting or facilitating the offense by Wiley. This conclusion is reinforced by the evidence of the spotlighting of non-union employees on other occasions by other pickets, both on this date and prior occasions during this strike, indicating that such was a standard picketing practice or pattern used in this strike, which bears on Small's knowledge and purposes on picket duty.[4]

---

4. " 'The least degree of concert or collusion between parties to an illegal transaction makes the act of one the act of all.' " *Commonwealth v. Wright et al*, 38 Somerset L. J. 85, 95 (1979).

Accordingly, Small is also guilty of the offense charged.

## NON-JURY VERDICT

Now, August 5, 1986, we find defendants Barry W. Wiley and Gary Dwayne Small guilty of the summary offense of harassment under Crimes Code §2709(3).

Defendants are advised that:

(a) They have the right to file post-verdict motions for new trial and/or in arrest of judgment, as provided in Criminal Rule 1123.

(b) Such motions must be in writing, must state specifically the grounds (reasons) for the motions, and must be filed in this court within 10 days.

(c) Only the issues (reasons) stated in such motions will be considered by the court, and by the appellate court in any further appeal.

(d) Defendants have the right to the assistance of counsel in the filing of such motions and in further appeal of any issues raised therein; if a defendant is unable to afford private counsel, and files with the court a petition establishing inability to pay, free counsel will be appointed for him by the court.