653 A.2d 706

**COMMONWEALTH of Pennsylvania**

v.

**Donald Carlos URRUTIA, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 19, 1994.

Decided Jan. 27, 1995.

228

230

Diane L. Morgan, Public Defender, Harrisburg, for appellant.

Richard E. Guida, Asst. Dist. Atty., Harrisburg, for Com., appellee.

Before BECK, HUDOCK and HESTER, JJ.

BECK, Judge:

The issue we decide, *inter alia,* is whether evidence of related prior bad acts is admissible where appellant has been charged with stalking. 18 Pa.Cons.Stat.Ann. § 2709(b). We find the evidence of related prior bad acts admissible, and we affirm the judgment of sentence.

Appellant Donald Urrutia was found guilty of terroristic threats and stalking. He was involved in a long term relationship with the victim, Denise Thompson. After having two children, the parties ended their relationship. Following the break-up the trial court granted Thompson's petition for a Protection From Abuse Order ("PFA Order"). At least twice, Urrutia came to Thompson's home where he exhibited violent behavior, and in one instance he injured a neighbor's child. On the day of his arrest, Urrutia again came to Thompson's residence, becoming violent and threatening to kill her. Urrutia fled when the police arrived but returned later when he believed the police had gone. In fact, the police had merely circled the block and arrested Urrutia after he again exhibited explosive behavior.

After a jury trial Urrutia was convicted of stalking[1] and terroristic threats. He was sentenced to eleven and one half (11½) to sixty (60) months for stalking and a concurrent probationary term of five (5) years for terroristic threats. Urrutia chose not to file post trial motions and this appeal followed.[2]

Urrutia argues that the evidence is insufficient to support his conviction for stalking. More specifically, he asserts that evidence of the two prior violent episodes were inadmissible as prior bad acts. These incidents occurred after the couple's relationship ended and before Urrutia was arrested. We disagree.

Pennsylvania enacted a stalking statute because of the growing perceived need to provide increased protection against certain types of predatory behavior.[3] Stalking often is

1. Pennsylvania's stalking law became effective June 23, 1993. Because the incidents resulting in Urrutia's arrest occurred in July of 1993, the statute is applicable in this case.

2. Under Pa.R.Crim.P. 1410, effective January 1, 1994, a defendant is not required to file post-trial motions in order to preserve issues on appeal.

3. California enacted the first stalking statute in 1990, and by 1994 forty-eight out of fifty states had similar laws on the books. M. Katherine Boychuk, *Are Stalking Laws Unconstitutionally Vague or Overbroad*, 88 Nw.U.L.Rev. 769 n. 1 (1994).

a precursor to increased violence and even homicide. Law enforcement officials view stalking as an early warning of future violence against the victim. In an effort to protect victims, the legislature sought to provide early intervention and possible deterrence. Therefore, Section 2709 of the Crimes Code relating to harassment, was amended to add section 2709(b) defining stalking.

The stalking statute was part of a larger legislative initiative encompassing both civil and criminal enactments. In addition to creating the crime of stalking, the legislature included stalking as a crime for which protective orders may be issued. 18 Pa.Cons.Stat.Ann. § 4954(1). Also, legislation provided that the police are authorized to arrest a suspect "without warrant upon probable cause whether or not the violation is committed in the presence of a law enforcement officer." 18 Pa.Cons.Stat.Ann. § 4955(b).

Stalking conduct also provides the basis for the issuance of a civil PFA order. 23 Pa.Cons.Stat.Ann. § 6108(a)(9), and police are authorized to arrest a suspect "without warrant upon probable cause whether or not the violation is committed in the presence of the police officer." 23 Pa.C.S.A. § 6113. The legislative scheme, both criminal and civil, was an attempt to interrupt as early as possible the escalating cycle of violence. With this background in mind we address the substance of this appeal.[4]

Urrutia first challenges the sufficiency of the evidence supporting his conviction for stalking. The standard of review used to determine the sufficiency of the evidence is well established.

The established test is whether, viewing all the evidence admitted at trial, together with all reasonable inferences which can be drawn therefrom, in the the light most favorable to the Commonwealth, the jury (or the court as fact

---

**4.** We note that stalking statutes in numerous jurisdictions have been challenged as being unconstitutionally overbroad or vague. *See, e.g., Pallas v. State of Fla.,* 636 So.2d 1358 (Fla.Dist.Ct.App.1994); *People v. Heilman,* 25 Cal.App.4th 391, 30 Cal.Rptr.2d 422 (1994). However, the constitutional issue is not before us.

finder) could have properly found that each element of the offense was proven beyond a reasonable doubt. While reasonable inferences must be drawn in the Commonwealth's favor, the inferences must flow from the facts and circumstances proven in the record, and must be of "such volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt." The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fall even under the limited scrutiny of appellate review.

*Commonwealth v. Scott*, 409 Pa.Super. 313, 597 A.2d 1220 (1991) (citations omitted).

Section 2709(b) of the Crimes Code defines stalking:

**(b) Stalking.**–A person commits the crime of Stalking when he engages in a course of conduct or repeatedly commits acts towards another person, including following the person without proper authority, under circumstances which demonstrate either of the following:

(1) an intent to place the person in reasonable fear of bodily injury; or

(2) an intent to cause substantial emotional distress to the person.

18 Pa.Cons.Stat.Ann. § 2709(b).

Urrutia first asserts that the evidence is insufficient to prove beyond a reasonable doubt that he engaged in a "course of conduct" for purposes of section 2709(b). Course of conduct is defined in section 2709(f) as "a pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct." 18 Pa.Cons.Stat.Ann. § 2709(f). Appellant's argument is meritless.

The Commonwealth produced ample evidence that Urrutia's conduct constituted a course of conduct as defined in § 2709(f). The evidence shows that Urrutia was involved in at least two similar violent episodes against the victim prior to the incident on the day of his arrest, and that Thompson procured a PFA Order to protect herself and her children

from Urrutia's ongoing abuse. Additionally, on the day of his arrest Urrutia accosted Thompson not once but twice, fleeing when the police first arrived and returning when he thought the coast was clear. Drawing all reasonable inferences in favor of the Commonwealth, we conclude that the evidence is sufficient to prove beyond a reasonable doubt that Urrutia engaged in a course of conduct as defined in the statute.[5]

■ Urrutia's more pivotal argument is that evidence of the two violent episodes before the day of his arrest were inadmissible because they were evidence of prior bad acts. The admissibility of evidence is a matter for the sound discretion of the trial court. An appellate court may reverse only where the trial court abused its discretion. *Commonwealth v. Billa,* 521 Pa. 168, 555 A.2d 835 (1989).

■ Prior bad acts generally are not admissible, especially for the purpose of showing the defendant's bad character or propensity to commit crime. *Billa, supra.* This general rule is subject to numerous exceptions, one of which is to show the defendant's intent. *Id.; Commonwealth v. Schwartz,* 419 Pa.Super. 251, 263, 615 A.2d 350, 356 (1992), *alloc. denied,* 535 Pa. 617, 629 A.2d 1379 (1993).

■ In the instant case, prior bad acts were properly admitted to establish Urrutia's intent to stalk his victim. The testimony permitted the inference that Urrutia intended to cause Thompson to fear for her physical safety or intended to cause her emotional distress.

■ Alternatively, the bad acts were also admissible to show a "course of conduct," an element of the crime. In this

5. Urrutia also argues that the evidence is insufficient to support his conviction for stalking because he had a "legitimate purpose" in going to Thompson's home; that purpose being to see his children. However, it appears that Urrutia has confused the elements of stalking with the elements of harassment. The crime of harassment requires, among other things, that the Commonwealth prove that the action complained of had no legitimate purpose. 18 Pa.Cons.Stat.Ann. § 2709(a)(3); *see also Commonwealth v. Evans,* 299 Pa.Super. 529, 535, 445 A.2d 1255, 1258 (1982). Because the crime of stalking has no such requirement, Urrutia's argument is without merit.

case the prior bad acts establish the course of conduct. In *Commonwealth v. Evans,* the court examined the admissibility of prior bad acts to prove the existence of a course of conduct for harassment. 299 Pa.Super. 529, 445 A.2d 1255 (1982). The court noted that proof of a course of conduct "undermines the appellant's contention that the reviewing court is precluded from examining the testimony elicited regarding matters that occurred prior to ... the date of the complained of conduct." *See also Commonwealth v. Schnabel,* 236 Pa.Super. 280, 284, 344 A.2d 896, 898 (1975) (evidence of single act of misconduct insufficient to establish "course of conduct" element of harassment); *Commonwealth v. Showalter,* 231 Pa.Super. 278, 283, 332 A.2d 456, 458 (1974) (evidence of prior violence against prosecutrix admissible as demonstrating overall scheme of harassment).

Course of conduct by its very nature requires a showing of a repetitive pattern of behavior. Therefore, where evidence of prior bad acts is necessary to establish the pattern, the evidence is admissible.

 Urrutia also challenges the trial court's admission of evidence of the civil PFA Order. He argues that such evidence is irrelevant and unduly prejudicial. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. *Commonwealth v. Spiewak,* 533 Pa. 1, 617 A.2d 696 (1992). Relevant evidence is usually probative. However, to be admissible its probative value must outweigh its prejudicial effect. *Commonwealth v. Wharton,* 530 Pa. 127, 607 A.2d 710 (1992). The PFA order is obviously relevant and probative on the question of intent and course of conduct. The purpose of the PFA Order was to bring "about a cessation of abuse of the plaintiff...." 23 Pa.Cons.Stat. Ann. § 6108(a). Being relevant and more probative than prejudicial, the evidence was properly admitted.

 Urrutia next challenges the discretionary aspects of

his sentence.[6] A review of the discretionary aspects of sentencing is not available to an appellant as of right, and this court may only reach the merits of such an appeal where it appears that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. 42 Pa.Cons.Stat.Ann. § 9781(b). What constitutes a substantial question must be evaluated on a case by case basis. However, we will be inclined to allow an appeal where an appellant advances a colorable argument that the trial judge's actions were inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms which underlie the sentencing process. *Commonwealth v. Losch*, 369 Pa.Super. 192, 201 n. 7, 535 A.2d 115, 119 n. 7 (1987).

Urrutia claims that the trial court did not adequately consider various mitigating factors when crafting his sentence. In particular, he suggests that the court did not give adequate weight to his good work history, his concern for his children, and the fact that on one occasion the victim assaulted him. An allegation that a sentencing court "failed to consider" or "did not adequately consider" certain factors does not raise a substantial question that the sentence was inappropriate. *Commonwealth v. McKiel*, 427 Pa.Super. 561, 629 A.2d 1012 (1993); *Commonwealth v. Williams*, 386 Pa.Super. 322, 562 A.2d 1385 (1989) (*en banc*). Such a challenge goes to the weight accorded the evidence and will not be considered absent extraordinary circumstances. *McKiel*, 427 Pa.Super. at 564, 629 A.2d at 1013. We find that Urrutia's argument does not raise a substantial question.[7]

**6.** As a preliminary matter we note that Urrutia has failed to provide a "Statement of Reasons Relied Upon for Allowance of Appeal," in compliance with Pennsylvania's Rules of Appellate Procedure. Pa. R.App.P. 2119(f). However, because the Commonwealth has failed to object to the defect, we need not dismiss the issue on this ground. *Commonwealth v. Losch*, 369 Pa.Super. 192, 535 A.2d 115 (1987).

**7.** Urrutia also suggests that the sentencing court erred by not ordering a pre-sentence investigation report. We point out that Urrutia waived the pre-sentence report and elected to be sentenced immediately. He also asserts error because the trial court did not place on the record sufficient reasons for his sentence. However, appellant's brief does not develop this issue and it is waived.

██ Urrutia finally challenges the trial judge's refusal to recuse herself from the case, alleging that because the trial judge had herself been the victim of harassment and stalking she was unable to preside over this case in a fair and impartial manner. Urrutia argues that the trial court's decision violated Canon 3(C)(1) of the Pennsylvania Code of Judicial Conduct. Canon 3(C)(1) states that "a judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned."

In *Reilly by Reilly v. Southeastern Pa. Transp. Auth.*, 507 Pa. 204, 219–20, 489 A.2d 1291, 1298–99 (1985), the Pennsylvania Supreme Court set forth the standards applicable when a charge of disqualification is alleged against a trial judge.

It is incumbent upon the proponent of a disqualification motion to allege facts tending to show bias, interest or other disqualifying events, and it is the duty of the judge to decide whether he feels he can hear and dispose of the case fairly and without prejudice because we recognize that our judges are honorable, fair and competent. Once this decision is made, it is final and the cause must proceed. The propriety of this decision is grounded in abuse of discretion and is preserved as any other assignment of error, should the objecting party find it necessary to appeal following the conclusion of the cause.

If the cause is appealed, the record is before the appellate court which can determine whether a fair and impartial trial were had. *If so, the alleged disqualifying factors of the trial judge become moot.*

*Id.* at 221–22, 489 A.2d at 1300 (emphasis in original). In the current case, Urrutia raised the question of the trial judge's partiality prior to trial. The judge addressed Urrutia's concerns and concluded that she was fully capable of presiding in a fair and unbiased manner. It therefore falls to this court to determine whether the trial was fair and impartial. If the trial was fair, any allegations of bias are moot. *Id.*

Urrutia raises no claim of bias as to the conduct of the trial. The only allegation of bias relates to the severity of his

sentence. However, Urrutia's sentence falls within the sentencing guidelines and presents no evidence of bias on the part of the trial judge. Therefore, Urrutia's charge of bias fails.

Judgments of sentence affirmed.