J-S18042-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER ZIEMBA | : | |
| | : | |
| Appellant | : | No.  910 MDA 2015 |

Appeal from the Judgment of Sentence January 14, 2015
in the Court of Common Pleas of Wyoming County,
Criminal Division, at No(s): CP-66-CR-0000324-2013

BEFORE:    BOWES, LAZARUS, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:             **FILED MARCH 16, 2016**

Christopher Ziemba (Appellant) appeals from the judgment of sentence entered after he was convicted of stalking, indecent exposure, open lewdness, and two counts of disorderly conduct.  After careful review, we affirm.

Appellant and the victims, Bernard and Sandra Razawich, lived in homes next door to each other in Lake Carey, Wyoming County, Pennsylvania.  While Bernard owned his home for many years, Appellant purchased the home during the middle of a property dispute among various neighbors who were all claiming to own parts of the same pieces of land surrounding their homes and the lake.  This dispute led to a quiet title action among various neighbors, including the Razawiches and Appellant.

*Retired Senior Judge assigned to the Superior Court.

One dispute in the quiet title action was over a piece of land where the Razawiches wished to park a car, which was a piece of land that Appellant was also claiming. Sandra testified that in May 2008, as retaliation for their claim of what he believed was his land, Appellant was "digging a trench around [their] car with his pants down [partway]." N.T., 10/21/2014, at 36. She testified that she and Bernard could see "a good portion" of Appellant's buttocks. *Id*. at 37. They reported the incident to police, and Appellant pled guilty to disorderly conduct as a result of the incident. In April 2009, after a trial in the quiet title action, the trial court awarded Bernard a piece of property that had a boathouse on it, but did not award him a second part of the land he was claiming. Appellant was not awarded any land in that litigation.

Following the verdict in the quiet title action, Appellant and the Razawiches had a number of encounters. Sandra testified that on June 6, 2010, she was standing outside her house with her grandchildren, and they saw Appellant sitting by the lake "showing … part of his buttocks again." *Id*. at 39. Shortly thereafter, Appellant "mooned" Bernard. *Id*. at 41. Sandra further testified that later the same weekend, she saw Appellant "grabbing his privates" at her. *Id*. at 43. She testified that he "grab[bed] them and [shook] them" even though his shorts were on. *Id*. at 44. She testified that "he was doing it to [her] and he still does it to her." *Id*.

Sandra then testified that in July of 2011, she saw large pieces of debris on her property. Bernard checked the surveillance camera and it showed Appellant throwing debris against their shed. *Id*. at 45. They contacted police, and Appellant was prosecuted and found guilty of harassment and disorderly conduct. *Id*. at 47. Bernard testified that he put surveillance cameras on the property prior to the incident "to protect [him]self from these strange things happening and what's going on." *Id*. at 170.

Sandra next testified about an incident that occurred on September 3, 2012, at around 1:00 a.m. She, Bernard, and several of their adult children were sitting on the deck, and they saw Appellant "with his pants down." *Id*. at 54. Then, Appellant "started dancing" and "playing with himself." *Id*. They could see his "penis and testicles … just bouncing around." *Id*. The jury viewed surveillance video depicting this incident.[1]

Sandra testified that because of these incidents, she "cannot relax when [Appellant is] around" and that she does not "know what he's going to do next." *Id*. at 57. She is concerned about having her children and grandchildren come to stay with her.

Appellant also testified about these incidents. He testified that he was digging the trench in May 2008 because of the property dispute. He stated

---

[1] That video is not included in the certified record.

that his pants were loose and when they would fall down, he would pick them up. *Id*. at 258. He claimed that the Razawiches filed charges in connection with this incident to coerce him into giving up some of his property in the dispute. Appellant testified that he did not remember the June 6, 2010 incident. Appellant admitted to having made a "mistake" with respect to placing the debris on the Razawiches' property in 2011. *Id*. at 262. Finally, with respect to the weekend of September 3, 2012, Appellant testified that he had a few drinks and was dancing for his girlfriend; but, he never grabbed his penis or took off any clothing.

On May 30, 2013, a criminal complaint was filed against Appellant. Specifically, he was charged with open lewdness, indecent exposure, and two counts of disorderly conduct with respect to the September 3, 2012 incident. Additionally, he was charged with stalking for the course of conduct that occurred between May 4, 2008 and September 3, 2012. Appellant was tried before a jury on October 21-22, 2014, and the jury returned a verdict of guilty on all five charges.

On January 14, 2015, Appellant was sentenced to an aggregate term of eight to 23½ months of incarceration, with a concurrent term of 12 months of probation. Notably, for the stalking and indecent exposure convictions, Appellant was given consecutive aggravated-range sentences. At the close of the sentencing hearing, counsel for Appellant withdrew his appearance, and attorney Christopher P. Arnone entered his appearance for

Appellant.  Appellant timely filed a post-sentence motion and also requested leave to file a supplemental post-sentence motion.  The trial court permitted the filing of the supplemental post-sentence motion, which included allegations of ineffective assistance of counsel.  On April 30, 2015, the trial court denied Appellant's post-sentence motion.

On May 27, 2015, Appellant *pro se* filed a notice of appeal to this Court.  The trial court ordered Appellant to file a concise statement of errors complained of on appeal, and Appellant complied.   This Court then remanded the case to conduct a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1988).  After determining that Appellant did not waive his right to counsel, the trial court appointed counsel to represent Appellant on appeal and filed an opinion.

On appeal, Appellant sets forth four issues for our review.[2]  We begin with Appellant's contention that the trial court erred in denying his motion *in limine* to exclude prior bad acts. Appellant's Brief at 21-25.[3] Appellant

---

[2] The Commonwealth's brief was initially due on November 16, 2015.  On November 17, 2015, the Commonwealth requested an extension of time to file its brief.  This Court gave the Commonwealth until December 16, 2015 to file its brief.  The Commonwealth filed its brief on February 12, 2016 without explanation.   Accordingly, the Commonwealth's brief was not considered in this case.

[3] Appellant references the trial court's order of August 19, 2014, which denied his motion to exclude evidence of prior bad acts.  While the order is part of the certified record, the motion is not included.

contends that the incidents that led to the stalking charge and conviction constituted prior bad acts which the trial court should have excluded.

"The admissibility of evidence is a matter for the sound discretion of the trial court. An appellate court may reverse only where the trial court abused its discretion." ***Commonwealth v. Urrutia***, 653 A.2d 706, 709 (Pa. Super. 1995).

"A person commits the crime of stalking when the person … engages in a course of conduct or repeatedly commits acts toward another person … under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person[.]" 18 Pa.C.S. § 2709.1(a)(1).

> In ***Commonwealth v. Evans***, [445 A.2d 1255 (Pa. Super. 1982),] the [C]ourt examined the admissibility of prior bad acts to prove the existence of a course of conduct for harassment. The court noted that proof of a course of conduct "undermines the appellant's contention that the reviewing court is precluded from examining the testimony elicited regarding matters that occurred prior to ... the date of the complained of conduct." ***See also Commonwealth v. Schnabel***,[] 344 A.2d 896, 898 ([Pa. Super.] 1975) (evidence of single act of misconduct insufficient to establish "course of conduct" element of harassment); ***Commonwealth v. Showalter***, [] 332 A.2d 456, 458 ([Pa. Super.] 1974) (evidence of prior violence against prosecutrix admissible as demonstrating overall scheme of harassment).
>
> Course of conduct by its very nature requires a showing of a repetitive pattern of behavior. Therefore, where evidence of prior bad acts is necessary to establish the pattern, the evidence is admissible.

***Urrutia***, 653 A.2d at 709-10.

- 6 -

Instantly, the Commonwealth could not prove a stalking charge without the admission of the incidents Appellant sought to exclude. In fact, under Appellant's logic, the Commonwealth could never prove a stalking case involving a course of conduct. These incidents were not "other acts" inadmissible under these circumstances. Rather, these were the acts themselves that led to the stalking charge against Appellant. Accordingly, the trial court did not abuse its discretion in denying Appellant's motion *in limine*, and Appellant is not entitled to relief.

Appellant next sets forth a convoluted argument about purported discovery violations by the Commonwealth. Appellant's Brief at 25-27. He claims first that the trial court erred in denying Appellant's request for a new trial based upon the Commonwealth's withholding of discovery and material pursuant to **Brady v. Maryland**, 373 U.S. 83 (1963). **Id**. at 25. As a corollary to this claim, Appellant argues that trial counsel was ineffective for failing to procure all surveillance videos and photos that the Razawiches had in their possession. Appellant acknowledges that "[n]either the [c]ourt [d]ocket nor trial counsel's file provided any written defense request for informal discovery." **Id**.[4]

_____

[4] Appellant also acknowledges that "the record is incomplete as to whether trial counsel ever conferred with the Commonwealth attorney since nothing appears on the record. The Commonwealth may be heard to argue that any further discovery was waived for failure to make a formal request for discovery." Appellant's Brief at 27.

At trial, the following exchange occurred with respect to video evidence:

[Defense Counsel:] OK, on the incident that you talked about, June 6th of 2010 when you said your-[Appellant] was on the dock, I believe.

[Bernard:] He was down on his waterfront on June-yeah.

[Defense Counsel:] Right, did you have any type of video or pictures of that incident?

[Bernard:] I didn't take any videos and save any videos of that incident.

[Defense Counsel:] OK, and on this night on September 3rd of 2012, I believe you had testified earlier that there were approximately nine cameras in place on your residence?

[Bernard:] Approximately.

[Defense Counsel:] Maybe more, maybe less.

[Bernard:] There's a couple more than that, I think.

[Defense Counsel:] And other than-this is the only video that we have of that night's events?  Out of the nine cameras, this is the one that you provided to the District Attorney's Office, correct?

[Bernard:] This is the video that I provided to the District Attorney's Office.  I'm sorry I had so much blank space early on, but we have all the eye witnesses that saw what went on versus the video.

[Defense Counsel:] But this is the only video that was provided.

[Bernard:] This is the only video that was provided.  That's correct.

N.T., 10/21/2014, at 209-10.

- 8 -

We set forth the following with respect to a ***Brady*** claim:

> Under ***Brady***[, ***supra***,] and subsequent decisional law, a prosecutor has an obligation to disclose all exculpatory information material to the guilt or punishment of an accused, including evidence of an impeachment nature. To establish a ***Brady*** violation, an appellant must prove three elements: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued.

***Commonwealth v. Spotz***, 47 A.3d 63, 84 (Pa. 2012).

Based on the foregoing, it is clear there was no ***Brady*** violation. Appellant offers no evidence that the Commonwealth had additional video or photographic evidence; therefore, he fails to show that any evidence was "suppressed by the prosecution, either willfully or inadvertently[.]" ***Id***. Moreover, to the extent Appellant is claiming that counsel was ineffective for failing to request this evidence, such a claim is not available to Appellant at this juncture. ***See Commonwealth v. Holmes***, 79 A.3d 862 (Pa. 2013) (reaffirming that claims of ineffective assistance of trial counsel are deferred for collateral review absent very narrow circumstances not relevant in this case). Accordingly, we will not review Appellant's ineffective-assistance-of-counsel claim at this time.

We now turn to Appellant's final two issues on appeal, both of which implicate the discretionary aspects of his sentence. Generally, Appellant argues that his aggravated range sentences are excessive and that the

sentences that were imposed consecutively should have been run concurrently. We address these claims mindful of the following:

It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal.

Before [this Court may] reach the merits of [a challenge to the discretionary aspects of a sentence], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code…. [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Disalvo*, 70 A.3d 900, 902 (Pa. Super. 2013) (citations omitted).

Appellant timely filed a notice of appeal. Appellant did not object to his sentence during the sentencing hearing; however, he did seek reconsideration of his sentence in his post-sentence motion. However, Appellant's brief does not contain a Pa.R.A.P. 2119(f) concise statement. "[W]hen the appellant has not included a Rule 2119(f) statement and the appellee has not objected, this Court may ignore the omission and determine if there is a substantial question that the sentence imposed was not appropriate, or enforce the requirements of Pa.R.A.P. 2119(f) *sua sponte*, *i.e.*, deny allowance of appeal." *Commonwealth v. Kiesel*, 854 A.2d 530, 533 (Pa. Super. 2004). Because the Commonwealth's brief was

filed extraordinarily late and was not considered, we will exercise our discretion to review Appellant's claim challenging the discretionary aspects of his sentence. **Commonwealth v. Stewart**, 867 A.2d 589 (Pa. Super. 2005) (ignoring the failure to include a Pa.R.A.P. 2119(f) statement where the Commonwealth did not file a brief).

Appellant sets forth a number of arguments which can be narrowed down to two categories: 1) the trial court abused its discretion by sentencing him to consecutive rather than concurrent sentences; and 2) the trial court considered improper factors in sentencing him in the aggravated range.

"When determining whether a substantial question has been raised, we have focused upon whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct in this case." **Commonwealth v. Zirkle**, 107 A.3d 127, 133-34 (Pa. Super. 2014). Here, we cannot say that the aggregate term of incarceration is excessive in light of the criminal conduct in this case; thus, we do not find a substantial question on this basis.[5]

However, we have held an "assertion that the sentencing court considered improper factors in placing the sentence in the aggravated range" raises a substantial question. Accordingly, we will review Appellant's

---

[5] We also note that the trial court's consecutive sentences were for the stalking charge and the indecent exposure charge. The open lewdness count and two counts of disorderly conduct all arose from the same incident that led to the indecent exposure charge. The trial court sentenced Appellant concurrently on those four counts.

claims as to the factors the trial court considered in imposing an aggravated-range sentence. **Commonwealth v. Stewart**, 867 A.2d 589, 592 (Pa. Super. 2005).

> In reviewing the decision of the sentencing court, our standard of review is well-settled:
>
>> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> **Commonwealth v. Rodda**, 723 A.2d 212, 214 (Pa. Super. 1999) (*en banc*) (quotations and citations omitted). A sentencing court may consider any legal factor in determining that a sentence in the aggravated range should be imposed. In addition, the sentencing judge's statement of reasons on the record must reflect this consideration, and the sentencing judge's decision regarding the aggravation of a sentence will not be disturbed absent a manifest abuse of discretion.

**Commonwealth v. Bowen**, 975 A.2d 1120, 1122 (Pa. Super. 2009) (some citations and quotations omitted).

For both stalking and indecent exposure, the standard-range sentence was probation to one month of incarceration. The aggravated range for each was four months of incarceration. Thus, Appellant's sentence of four to twelve months of incarceration for stalking and four to 11½ months of

incarceration for indecent exposure were both aggravated-range sentences. The trial court offered the following rationale.

> The court finds that the sentence in this matter is in the aggravated range due to the following circumstances. [Appellant] has at no time before this court shown any remorse for the actions against the victims. Although he has apologized to the court, the court has noted he has never apologized to the victims in this matter. The court notes that [Appellant] has continued a course of conduct against the victims over a period of seven years. The court notes that during the trial, some of the actions of [Appellant] were before minor children. The court further notes that during the trial, [Appellant] continued the actions against the victims during his period of bail. The court further notes the serious nature of this offense and the effects that this offense has had upon the victims and the court notes that all of the above circumstances justify sentencing in the aggravated range. The court further notes that any lesser of a sentence in this matter would depreciate the seriousness of [Appellant's] actions.

N.T., 1/14/2015, at 16-17.

Appellant first argues that the trial court abused its discretion by relying on the fact that the course of conduct lasted for seven years when that factor was already taken into account as an element of the crime of stalking. Appellant's Brief at 17. With respect to stalking, our Court has offered the following.

> Each time a stalker commits an act, as part of an established course of conduct, under circumstances demonstrating an intent to place the victim in fear of bodily injury or to cause the victim substantial emotional distress, the fear and emotional distress increases. The repetitiveness of stalking acts is indicative of the defendant's unrelenting obsession with the victim and often reveals an escalation of violence. For these reasons, it is essential that each stalking act, which is included in an

established course of conduct, be a separate offense, punishable with an individual sentence.

*Commonwealth v. Leach*, 729 A.2d 608, 612-13 (Pa. Super. 1999). Based on the foregoing, we cannot say that the trial court abused its discretion by considering the fact that the stalking lasted seven years. By its own definition, each act could have been prosecuted as a separate count of stalking. Here, Appellant was prosecuted only once; thus, it was proper for the trial court to look at the fact that numerous incidents of stalking occurred over a seven-year timeframe. Accordingly, Appellant is not entitled to relief on this basis.

Appellant next argues that the trial court abused its discretion by relying on Appellant's "perceived lack of remorse." Appellant's Brief at 17. Specifically, the trial court noted that Appellant apologized to the court at sentencing, but did not apologize directly to the victims at that time. Lack of remorse has long been considered a proper sentencing factor. *See, e.g.*, *Commonwealth v. Begley*, 780 A.2d 605 (Pa. 2001); *Commonwealth v. Miller*, 724 A.2d 895, 902 (Pa. 1999) ("[T]he demeanor of a convicted defendant, including his apparent lack of remorse, is a proper consideration in fixing the sentence for a non-capital offense."). Accordingly, we discern no abuse of discretion on this basis.

Appellant also argues that the trial court abused its discretion by concluding that some of these actions "were before minor children."

- 14 -

Appellant's Brief at 20. While we agree with Appellant that the indecent exposure incident did not occur before minor children, there was testimony to support the fact that the June 6, 2010 incident did occur in front of some of the Razawiches' grandchildren. Accordingly, the record supports the trial court's consideration of this factor in sentencing and Appellant is not entitled to relief on this basis.

Finally, Appellant argues that the record does not support the trial court's conclusion that Appellant "continued actions against the victims during his period of bail." Appellant's Brief at 19. Instantly, Appellant's bail was set on June 27, 2013 and he was subject to the terms of bail, which included no contact with the victims from that point forward.

Immediately after Appellant was convicted, the trial court heard argument with respect to bail. N.T., 10/22/2014, at 345-54. The Commonwealth argued for an increase in bail. Initially, the Commonwealth conceded that there had been no bail violations, but then set forth the following.

> He hasn't been charged with a violation for this, but there's an incident that occurred where we believe [Appellant] was following Mr. Razawich down in Wilkes-Barre area because of photograph of Mr. Razawich's vehicle down there was sent to Mr. Razawich's employer with a letter signed by [Appellant], claiming that this truck cut him off and that he was ta[]king a picture of it and sending to his employer so there hasn't been any charge filed in that, but the Commonwealth believes that that's just further conduct. … He was obviously following Mr. Razawich.

***Id***. at 347.[6]

Appellant responded that he did not know who was driving the truck; that it is his practice to write down the license plate number and send a letter to an employer if he sees erratic driving; and that he lives a block from where this incident occurred. ***Id***. at 351-52.

In light of this information, we conclude that the trial court's reliance upon continued actions by Appellant against the Razawiches while on bail was a proper factor to consider and the trial court did not abuse its discretion. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/16/2016

---

[6] The transcript indicates that the truck showed the name of the company on it.