**Commonwealth v. Hennel**

*Jay Hannon,* for Commonwealth.
*Timothy E. Possenti,* for defendant.

JENKINS, *J.,* May 26, 2010—Jeffrey Hennel pled guilty to multiple counts of stalking, harassment and terroristic threats for subjecting four women to numerous phone calls and threatening messages between mid-2007 and 2009. The court sentenced Hennel to nine—23 months imprisonment and 10 years consecutive probation. Minutes after the sentencing hearing, Hennel said to a deputy sheriff: "What if I go shoot the victims, what if I go blow up their house?" The Commonwealth moved for reconsideration of sentence immediately after this alarming statement. The court held another hearing and resentenced Hennel to a total of 15-35 months imprisonment and eight years consecutive probation.

In this direct appeal, Hennel argues that the court abused its discretion by increasing his sentence. The court has the authority to impose a new, higher sentence on the basis of post-sentence misconduct. *Commonwealth v. Lal,* 156 Pa. Commw. 366, 373, 627 A.2d 281, 285 (1993) (citing *Commonwealth v. Moore,* 225 Pa. Super. 264, 302 A.2d 396 (1973). Hennel's outrageous remark after sentencing warrants an increase in his sentence, for he exhibits a greater threat to public safety than the court perceived at his first sentencing hearing. Hennel's amended judgment of sentence should be affirmed.

The factual background of this case comes from affidavits of probable cause underlying the criminal complaints against Hennel[1] and from testimony during his sentencing hearings. In 2007, Price-Waterhouse Coopers LLP (PWC) rejected Hennel's application for employment as an intern. That summer and fall, Hennel deluged four PWC female employees with phone calls and messages, sometimes over 100 times an hour. Springfield police officers visited Hennel and his family, who assured that the calls and messages would stop.

In mid-January 2008, Hennel resumed his phone calls (including calls to the victims' home phone numbers) along with threatening, sexually explicit e-mails to female PWC employees. One e-mail stated:

"Hi Kari—I hope you get breast c[a]ncer and die. I also hope you get cervical cancer. The black male foot fetish attacker will attacker you. He will suck your toes and he will stick his finger up your vagina and take all your money. And then the black male foot fetish attacker will stick a soda bottle up your vagina."

On February 4, 2008, Ridley Township police arrested Hennel and charged him with 214 counts of harassment (no. 8213-08). A magisterial district judge set unsecured bail and released Hennel on condition that he refrain from criminal activity and contact with the victims.

In April and May, Hennel again posted threatening messages on a victim's Facebook page. On May 30, 2008, Ridley police arrested him again and charged him with

---

1. Hennel does not dispute the facts in the affidavits.

harassment and other crimes (no. 8226-08). A magisterial district judge revoked his previous bail and re-set bail at $5,000 cash. He remained in jail until August 11, 2008, when the judge reduced his bail to 10 percent of $5,000 and released him, once again on condition that he refrain from criminal activity and contact with the victims.

In late January 2009, Hennel again made dozens of threatening phone calls to the victims at their work and cell phone numbers. On February 26, 2009, Ridley police arrested him again and charged him with new counts of harassment, stalking and terroristic threats (no. 1332-09). The magisterial district judge revoked bail on the previous charges, and he remained in jail thereafter.

On June 1, 2009, Hennel pled guilty to charges of stalking, harassment and terroristic threats. At sentencing on July 7, 2009, one PWC employee, Catherine Clay, testified that her voicemail box was constantly full of "strange, rude and disturbing" calls with "spitting, screaming, and insulting and name-calling, all of them demanding." N.T., 7/7/09, p. 6. Her phone rang all day long, but nobody could explain why. N.T., 7/7/09, p. 6. Eventually, she learned that other female employees were targets of identical conduct. N.T., 7/7/09, p. 6. Shortly before Christmas 2007, she read a posting on the Internet about "the horrific and sexually obscene way that this person intended to kill me, my mother, and my female colleagues," leaving her terrified and unsure whether to come to work or stay home. N.T., 7/7/09, p. 7. Hennel posted additional obscene and violent messages and made "bold hand gestures" toward her in court, "mocking us and the court." N.T., 7/7/09, p. 8. Ellen Brotman, attorney

for the victims, testified that Hennel continued to harass the victims even after he was arrested and confined in a mental health facility. N.T., 7/7/09, p. 10. His behavior escalated from hundreds of annoying phone calls and hang-ups to offensive and obscene e-mails and voice-mails and finally to death threats posted on the Internet, "couched in the most graphic and frightening terms[,] and not just directed to these women, but to their children and to their mothers." N.T., 7/7/09, pp. 10-11. This conduct stopped only when Hennel was in prison. N.T., 7/7/09, p. 11. A psychosexual report by Catherine Surbeck, Ph.D. predicted that Hennel's next step might be physical violence. N.T., 7/7/09, p. 51.

Defense counsel submitted a letter from Henell addressed to the victims which stated:

"I'm sorry for the fear and anxiety I've caused you due to my behavior. You did not deserve this in any way. It was wrong, I understand the fear I put you through . . . and I am sorry from the bottom of my heart. I will never do this again. I respect your wishes and the company's wishes, and there will never be any contact again. I'm working with my lawyer and doctor on OCD, impulse control, and better handling situations. However, there will be no contact ever again. I'm sorry." N.T., 7/7/09, pp. 42-43.

The same letter apologized to the court "for my behavior and the stress and anxiety I caused these victims . . . This will never happen again." N.T., 7/7/09, pp. 43-44.

Based on the persistent and escalating nature of Hennel's crimes, the court imposed an aggregate sentence of

nine—23 months imprisonment and 10 years consecutive probation along with a highly structured residential treatment program with intense supervision. N.T., 7/7/09, pp. 52-56.

Two days later, the Commonwealth filed a timely motion for reconsideration of sentence based on Hennel's misconduct several minutes after sentencing. At a hearing on August 17, 2009, Deputy Sheriff Juisti testified that a few minutes after sentencing, as he was transporting Hennel to Probation and Parole for processing, Henell exclaimed: "What if I go shoot the victims, what if I go blow up their house?" N.T., 8/17/09, p. 5. Hennel blurted out this remark voluntarily; it was not in response to questions or comments by any deputy. N.T., 8/17/09, p. 5. The victims were not present. N.T., 8/17/09, p. 5. The court found the deputy sheriff correctly interpreted Hennel's remark as threatening the victims. These unsolicited comments "certainly were in contrast to what [Hennel] stated here in open court. And they certainly reflect a lack of impulse and thought control. And that's alarming." N.T., 8/17/09, pp. 18-19. The court vacated the original sentence and imposed a new sentence of 15-35 months imprisonment[2] and eight years consecutive probation. Hennel filed a timely post-sentence motion for reconsideration, a timely notice of appeal from the order denying his post-sentence motion and a timely statement of matters complained of on appeal.

---

2. The terms of imprisonment were as follows: two and one-half—six months for harassment at no. 8226-08 with credit for time served, six—12 months at no. 8213-08 for harassment with credit for time served, 15 days—11 months for terroristic threats at no. 1332-09, and three terms of two—eight months for three counts of stalking at no. 1332-09. All terms ran consecutively.

In his first argument on appeal, Hennel contends that the court committed an error of law and/or abused its discretion by resentencing him for conduct occurring after his initial sentencing hearing and which was not preserved at the time of his initial sentencing. For the following reasons, Hennel is incorrect.

The court has jurisdiction to impose a new, higher sentence for the defendant's post-sentence misconduct. *Lal, supra,* 156 Pa. Commw. at 372-73, 627 A.2d at 285 (court has discretion to increase defendant's sentence for post-sentence misconduct so long as increase is not result of judicial vindictiveness). The court cannot increase the defendant's sentence, however, unless the Commonwealth files a motion for reconsideration of sentence within 10 days of the original sentence. Pa.R.Crim.P. 721(B)(1); *Commonwealth v. Nickens,* 923 A.2d 469, 472 (Pa. Super. 2007) (trial court was without a basis to increase defendant's sentence absent timely post-sentence motion from the Commonwealth seeking increase).

Hennel's increased sentence satisfies these standards. The Commonwealth filed a motion for reconsideration two days after the initial sentencing hearing, well within Rule 721(B)(1)'s time limit. Hennel's contention that this conduct was not preserved on the record during the original sentencing hearing is meritless; the record could not possibly preserve conduct that occurred after the hearing.

The reason for the lengthier prison sentence was not judicial vindictiveness but Hennel's dishonesty and lack of impulse control, traits illustrated by his remark to the deputy sheriff after he feigned an apology in open court. The deputy sheriff accurately interpreted Hennel's re-

mark as a threat of violence; it was not mere "ambiguous bitter ruminations" about his sentence, to quote Hennel's imaginative rationalization. Indeed, this was precisely the type of remark that Hennel tormented the victims with for months. While Hennel did not threaten the victims directly and could not immediately carry the threat out, he *did* say it to a law enforcement officer, the last person he should have said this to other than the victims and the court. The timing of the threat was remarkable as well; it was moments after being sent to jail, when he should have been at his most contrite, and moments after he falsely assured the court and the victims that he would stop this misbehavior. Such brazen threats, flagrant disregard for his promises and incredibly poor judgment demonstrates that Hennel poses a greater danger to the community than the court originally thought. The court properly increased his prison sentence.[3]

Hennel's second argument is that the court abused its discretion by granting the Commonwealth's motion to increase his sentence on the ground that he lacked remorse. The court acted within its discretion by recalibrating Hennel's prison sentence to meet the individual circumstances of this case.

The standard of review in an appeal from the discretionary aspects of a sentence is well settled:

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion.

---

3. The fact that the court reduced Hennel's probationary tail from 10 years to eight years is further proof that it did not resentence him vindictively.

In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Commonwealth v. Hardy,* 939 A.2d 974, 980 (Pa. Super. 2007).

In fashioning a sentence, "the trial court must impose a term of confinement consistent with the protection of the public, the gravity of the offense as it relates to the impact of the victim and to the community, and the rehabilitative needs of the defendant. 42 Pa.C.S. §9721. The trial court is vested with broad discretion in determining the defendant's sentence since the court is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime. *Commonwealth v. Ward,* 524 Pa. 48, 52, 568 A.2d 1242, 1243 (1990). Although the trial court must consider the Sentencing Guidelines, the court is not obligated to impose a sentence deemed appropriate under the Sentencing Guidelines. *[Commonwealth v.] Saranchak,* 544 Pa. [158,] 177 n.18, 675 A.2d [268,] 277 n.18 [(1996)]. At the same time, the trial court cannot justly sentence a defendant unless it possesses sufficient and accurate information about the circumstances of the offense and the character of the defendant to formulate its judgment. *Commonwealth v. Devers,* 519 Pa. 88, 546 A.2d 12 (1988). In imposing a defendant's sentence, the trial court must state the reasons for the sentence on the record. 42 Pa.C.S. §9721; Pa.R.Crim.P. 1405(b). As long as the trial court's reasons

demonstrate that it weighed the Sentencing Guidelines with the facts of the crime and the defendant's character in a meaningful fashion, the court's sentence should not be disturbed. *Devers,* 519 Pa. at 101, 546 A.2d at 18." *Commonwealth v. Begley,* 566 Pa. 239, 301-302, 780 A.2d 605, 642-43 (2001).

Hennel misconstrues the reason for his lengthier prison term. The court did not adopt the Commonwealth's argument that he lacked remorse; instead, the court decided that he represented a greater threat to the victims and community than it originally thought. During the first sentencing hearing, the court imposed an aggravated sentence at no. 1332-09 due to the impact of Hennel's crimes on the victims and his persistent, escalating misconduct. N.T., 7/7/09, pp. 52-53. At the same time, the court did not impose as high an aggravated sentence as it could have, since it believed that Hennel had sufficient resolve and impulse control to stop harassing the victims. Hennel's post-sentence remark to the deputy sheriff convinced the court that his original prison term was too short to protect the victims and general public. In accordance with Begley, the court increased his prison term to satisfy this critical consideration.

Hennel claims in his third argument that the court abused its discretion by increasing his sentence "because of its finding that the County of Delaware lacked services to treat [his] mental illnesses and personality disorders." Although the state prison system has better mental health treatment programs than Delaware County prison, N.T., 8/17/09, pp. 10, 47, this is not what motivated the increase in Hennel's sentence. As discussed above, the reason for the increase was to better protect the victims and public.

The fact that Hennel will obtain better mental health treatment in state prison is a by-product of, but not the reason for, his increased sentence.

Hennel's fourth argument is that (a) his post-sentence remark was due to mental illness; (b) he received no treatment between his initial sentencing and the remark; and therefore (c) the court is punishing him for a "manifestation of his illness." In effect, Hennel contends that the court failed to consider mental illness as a mitigating factor against increasing his sentence—an improper issue for appellate review.

To reach the merits of a discretionary sentencing issue, the Superior Court must determine, inter alia, whether there is a substantial question that the sentence is inappropriate under the Sentencing Code. *Commonwealth v. Lebarre,* 961 A.2d 176, 178 (Pa. Super. 2008) (citing *Commonwealth v. Bullock,* 948 A.2d 818, 825-26 (Pa. Super. 2008)). The Superior Court "has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for [appellate] review." *Commonwealth v. Cannon,* 954 A.2d 1222, 1229 (Pa. Super. 2008) (defendant failed to raise a substantial question for review that trial court abused its discretion at time of re-sentencing him for possession of child pornography, solicitation to prostitution and indecent assault, and corruption of minors; defendant's bald assertions that trial court focused on seriousness of sexual crime without considering significant factors including his education, lack of a prior record, and fact that no physical conduct was involved with victim failed to show how sentence was inconsistent with Sentencing Code or contrary to fundamental norms un-

derlying sentencing process); *see also, Commonwealth v. Matroni,* 923 A.2d 444, 455 (Pa. Super. 2007) (defendant's argument that sentence was abuse of discretion because he had no prior criminal record, had a stable family life, and a good work history failed because it amounted to claim that trial court failed to properly consider mitigating factors when fashioning sentence); *Commonwealth v. Lewis,* 911 A.2d 558, 567 (Pa. Super. 2006) (argument that court failed to consider mitigating factors including defendant's background, history, criminal record, and overall acceptance of responsibility for the injuries caused to the victim did not raise substantial question that sentence was inappropriate); *Commonwealth v. Ladamus,* 896 A.2d 592, 595-96 (Pa. Super. 2006) (argument that court neither addressed nor considered defendant's medical condition or his status as primary caregiver for his mother did not raise substantial question); *Commonwealth v. Bullock,* 868 A.2d 516, 528-29 (Pa. Super. 2005) (defendant did not raise substantial question by stating that sentence failed to reflect significant mitigating evidence of his serious mental illness history and jury's finding of guilty but mentally ill); *Commonwealth v. Griffin,* 804 A.2d 1, 9 (Pa. Super. 2002) (claim that trial court did not properly consider mitigating factors of mental incapacity and good behavior while incarcerated did not raise substantial question); *Commonwealth v. Kraft,* 737 A.2d 755, 757 (Pa. Super. 1999), *appeal denied,* 560 Pa. 742, 747 A.2d 366 (1999) (argument that sentencing court did not adequately consider her personal life situation as grandmother who must care for small child did not raise substantial question); *Commonwealth v. Wellor,* 731 A.2d 152, 155 (Pa. Super. 1999) (argument in indecent assault and simple assault case

that court failed to consider "mitigating factor" that defendant approached victim because he was angry that she was driving with her vehicle's headlights turned off and he was worried about safety of his own child did not raise substantial question); *Commonwealth v. Bershad,* 693 A.2d 1303, 1309 (Pa. Super. 1997) (claim that court did not give adequate consideration to defendant's rehabilitative needs and mitigating circumstances did not present substantial question); *Commonwealth v. Bowersox,* 456 Pa. Super. 260, 263, 690 A.2d 279, 281 (1997) (claim that court failed to consider that defendant had no criminal record, a job offer at the time of sentencing and a 9-year-old daughter did not present substantial question); *Commonwealth v. Yanoff,* 456 Pa. Super. 222, 236, 690 A.2d 260, 268 (1997) (claim that sentencing court failed to consider mitigating factors in rendering sentence does not raise substantial question); *Commonwealth v. Byrd,* 441 Pa. Super. 351, 355, 657 A.2d 961, 963 (1995) (contention that court failed to give sufficient consideration to defendant's use of his incarceration time to improve his education, his use of the Salvation Army programming, and his mastery of his anger did not raise substantial question); *Commonwealth v. Urrutia,* 439 Pa. Super. 227, 233-34 653 A.2d 706, 710 (1995), *appeal denied,* 541 Pa. 625, 661 A.2d 873 (1995) (claim that court did not adequately consider various mitigating factors such as defendant's good work history, his concern for his children, and fact that victim assaulted him on one occasion did not raise substantial question); *Commonwealth v. Williams,* 386 Pa. Super. 322, 326, 562 A.2d 1385, 1388 (1989) (en banc), (allegation that sentencing court "failed to consider" or "did not adequately consider" various factors is, in effect, a request that Su-

perior Court substitute its judgment for that of the lower court in fashioning defendant's sentence; such an allegation does not raise substantial question).

In view of the above cases—particularly *Bullock, supra,* 868 A.2d at 528—Hennel's claim that his mental illness bars an increase in sentence does not present a substantial issue for appellate review.[4]

Hennel next argues that the court abused its discretion by sentencing him in the aggravated range of the Sentencing Guidelines despite finding that he suffers from mental illnesses and personality disorders. Once again, this equates to the argument that the court failed to consider mental illness as a mitigating factor at sentencing, a claim not amenable to review. *Bullock, supra.*

Hennel's final argument is that the court incorrectly calculated credit for time served due to Hennel. By the time of his second sentencing hearing on August 17, 2009, Hennel had served approximately eight and one-half months of prison time. The court properly awarded credit for such time served "as the defendant is entitled . . ." at all three transcripts. (Certificates of imposition of judgment of sentence, paragraph F, nos. 8226-08, 8213-08,

---

4. In any event, Hennel's mental illness acted as a mitigator of sorts, because his increased sentence was still far below the maximum that the court might otherwise have imposed. His two and one-half—six month prison term for harassment at no. 8226-08 was below the six—12 month maximum for third-degree misdemeanors; his 15 day—11 month prison term for terroristic threats at no. 1332-09 was below the two and one-half—five year maximum for first-degree misdemeanors; and his three terms of two—eight months for stalking at no. 1332-09 were below the two and one-half—five year maximum for first-degree misdemeanors.

1332-09.) Since this is a state sentence, the Board of Probation and Parole has the ministerial duty to apply the appropriate amount of credit toward each sentence. This court made no credit time calculations.

For all of the foregoing reasons, the court recommends that Hennel's judgment of sentence be affirmed.