J-S18019-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SPENCEL BROWN, | |
| Appellant | No. 1674 EDA 2013 |

Appeal from the Judgment of Sentence April 30, 2013
In the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0003785-2011

BEFORE: SHOGAN, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J. **FILED OCTOBER 17, 2014**

Following a bench trial, the trial court found Spencel Brown guilty of aggravated assault[1], simple assault[2], carrying a firearm without a license[3], carrying a firearm on public streets in Philadelphia[4], possession of an instrument of crime[5] and reckless endangerment of another person[6]. The court found Brown guilty of these charges based on evidence that Brown shot at a man multiple times after chasing him across a street in the Overbrook section of Philadelphia. On April 30,

---

[*] Retired Senior Judge assigned to the Superior Court.
[1] 18 Pa.C.S. § 2702.
[2] 18 Pa.C.S. § 2701.
[3] 18 Pa.C.S. § 6106.
[4] 18 Pa.C.S. § 6108.
[5] 18 Pa.C.S. § 908.
[6] 18 Pa.C.S. § 2705.

2013, the court sentenced Brown to 5½-11 years imprisonment plus two consecutive five year terms of probation.

Brown filed timely post-sentence motions challenging the weight of the evidence and a timely notice of appeal[7]. Both Brown and the trial court complied with Pa.R.A.P. 1925.

---

[7] In a memorandum dated April 22, 2014, we remanded this case to the trial court and directed it to determine whether Brown filed his post-sentence motions on May 10, 2013 or on May 13, 2013. The record was unclear as to which of these dates was correct, and we needed to determine the correct date in order to ascertain whether Brown's appeal was timely.

Our memorandum explained that "a written post-sentence motion **shall** be filed no later than 10 days after imposition of sentence." Pa.R.Crim.P. 720(A)(1) (emphasis added). When the defendant files a timely post-sentence motion, the 30-day appeal period is tolled either until (1) the court decides the motion or (2) the clerk of courts enters an order denying the motion by operation of law. Pa.R.Crim.P. 720(A)(2)(a-b). An untimely post-sentence motion does not toll the appeal period.

The trial court imposed sentence on April 30, 2013. If Brown filed his post-sentence motions on May 10, 2013, (1) they were timely under Rule 720, (2) his appeal period did not begin running until May 13, 2013, when the trial court denied his motions, and (3) his appeal on June 7, 2013 is timely. If Brown filed his post-sentence motions on May 13, 2013, (1) they were untimely under Rule 720, (2) his appeal period expired on May 30, 2013, and (3) his notice of appeal on June 7, 2013 was untimely.

On June 10, 2014, the trial court determined that Brown filed his post-sentence motions on May 10, 2013. Based on this finding of fact, we conclude that Brown's appeal on June 7, 2013 was timely and that we have jurisdiction over his appeal.

Brown raises two issues in this appeal: (1) the verdict is against the weight of the evidence; and (2) his sentence is excessive. Neither issue has merit. We affirm.

With regard to Brown's first issue, a challenge to the weight of the evidence, our standard of review is as follows:

> A verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the fact[-]finder. Rather, a new trial is warranted only when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Where, as here, the judge who presided at trial ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.
>
> One of the least assailable reasons for granting or denying a new trial is the lower court's determination that the verdict was or was not against the weight of the evidence and that new process was or was not dictated by the interests of justice. Thus, only where the facts and inferences disclose a *palpable abuse of discretion* will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal.

***Commonwealth v. Morales***, 91 A.3d 80, 91-92 (Pa.2014) (citations omitted).

3

The trial court acted within its discretion by denying Brown's post-sentence motions objecting to the weight of the evidence. The trial court opinion explains that Brown chased another male down the street on a crowded street in the Overbrook section of Philadelphia on March 12, 2011 and then fired a gun at him several times. One eyewitness observed Brown shooting the gun. The eyewitness's description of the shooter matched the description of Brown observed by two police officers walking down the street moments before the shooting was reported. Brown fled the scene after shooting the gun. Shell casings recovered at scene of the shooting came from a dismantled weapon discovered in the residence where Brown was arrested. We incorporate by reference the trial court's careful presentation of the evidence and analysis in pages 2-7 of its opinion.

Brown's second issue on appeal, a claim that his sentence is excessive, raises a discretionary challenge to his sentence. "Challenges to the discretionary aspects of sentencing do not entitle a petitioner to review as of right." *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa.Super.2011) (citing *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa.Super.2000)). An appellant must satisfy the following four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence:

> (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Allen*, 24 A.3d at 1064.

Brown filed a timely notice of appeal, preserved the issue at sentencing[8], and included a statement of reasons pursuant to Rule 2119(f) in his brief (albeit in the wrong location)[9]. We must therefore determine whether his issue raises a substantial question.

---

[8] We disagree with the Commonwealth's argument that Brown failed to raise the issue of excessiveness at sentencing. The record reflects that Brown's attorney argued that the sentence should be in the "middle of the guidelines", an implicit request that the Court refrain from an aggravated sentence. N.T., 4/30/13, p. 18. The Commonwealth responded by seeking an "aggravated sentence" above the guidelines. *Id*., pp. 18-24. We find under these circumstances that defense counsel adequately addressed the issue of excessiveness at sentencing.

[9] Rule 2119(f) requires the appellant to include a separate section in his brief, immediately preceding the argument section, which explains concisely the reasons for granting appeal with regard to the discretionary aspects of his sentence. Brown neglects to include a separate Rule 2119(f) section in his brief and attempts instead to discuss this subject in his argument. While we do not approve of this methodology, we decline to find that the absence of a separate Rule 2119(f) statement constitutes a waiver of Brown's objections to the discretionary aspects of his sentence. *See Commonwealth v. Reynolds*, 835 A.2d 720, 733 (Pa.Super.2003) (where appellant failed to provide separate Rule 2119(f) statement in his brief but instead raised challenge to discretionary aspect of sentence in the first

"The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis." *Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa.Super.2011) (quoting *Commonwealth v. Fiascki*, 886 A.2d 261, 263 (Pa.Super.2005)). A substantial question exists where a defendant raises a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process. *Id.* (quoting *Commonwealth v. Titus*, 816 A.2d 251, 255 (Pa.Super.2003)).

Brown's prior record score is two, and the offense gravity score for aggravated assault is ten. The standard sentencing range under these circumstances is 54-60 months. The court sentenced Brown to 66 months, within the aggravated range of the guidelines, based on his membership in a violent gang, his history of stops and arrests, and his brazen conduct in shooting at another male on a crowded street. Brown argues that the court ignored several factors, such as his desire to go to college, his remorse over this incident, his history of legitimate employment, and his desire to set a positive example for younger relatives. In essence, Brown argues the court failed to

paragraph of argument portion of his brief on this issue, "we shall consider this first paragraph in the argument portion of Appellant's brief on this issue as Appellant's Rule 2119(f) statement").

consider certain mitigating factors and, as a result, imposed an excessive sentence. This claim does not present a substantial question for review. *See Commonwealth v. Coolbaugh*, 770 A.2d 788, 793 (Pa.Super.2001) ("Appellant's claim that the court did not consider his personal life situation of having a drug problem does not raise a substantial question"); *Commonwealth v. Urrutia*, 653 A.2d 706, 710 (Pa.Super.1995) ("an allegation that a sentencing court 'failed to consider' or 'did not adequately consider' certain factors does not raise a substantial question that the sentence was inappropriate"). Further, his claim that the sentence is excessive does not raise a substantial question, for he fails to explain how his sentence violated a provision of the Sentencing Code or a fundamental norm of the sentencing process. *See Commonwealth v. Mouzon*, 812 A.2d 617 (Pa.2002) (only if the defendant sufficiently articulates the manner in which the sentence violates a specific provision of the Sentencing Code or a particular fundamental norm will a claim of excessiveness raise a substantial question).

Even if Brown raises a substantial question, it is meritless. "Sentencing is a matter vested within the discretion of the trial court and will not be disturbed absent a manifest abuse of discretion." *Commonwealth v. Crump*, 995 A.2d 1280, 1282 (Pa.Super.2010) (citing *Commonwealth v. Johnson*, 967 A.2d 1001 (Pa.Super.2009)). "An abuse of discretion requires the trial court to

7

have acted with manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.* (citing *Commonwealth v. Walls,* 926 A.2d 957 (Pa.2007)).

"A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." *Crump*, 995 A.2d at 1283 (citing *Commonwealth v. Malovich,* 903 A.2d 1247 (Pa.Super.2006)). The sentencing hearing transcript and the court's opinion demonstrates that it reviewed all of the relevant evidence, including the mitigating factors presented by Brown, and determined after careful consideration that a sentence in the aggravated range was necessary.

Therefore, the court acted within its discretion by sentencing Brown to 5½--11 years' imprisonment.

Judgment of sentence affirmed.

Judge Shogan joins in the memorandum.

Judge Platt concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/17/2014</u>

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

COMMONWEALTH OF
PENNSYLVANIA

vs.

SPENCEL BROWN

:
:
:
:
:
:
:
:
:

CP-51-CR-0003785-2011

SUPERIOR COURT
NO. 1674 EDA 2013

OPINION

GEROFF, J.



CP-51-CR-0003785-2011 Comm. v. Brown, Spencel
Opinion

7079836001

OCTOBER 30, 2013

FILED

OCT 3 0 2013

Criminal Appeals Unit
First Judicial District of PA

## I.    PROCEDURAL HISTORY

On January 31, 2013, after waiving his right to a jury trial, the Defendant, Spencel Brown, was found guilty of aggravated assault, simple assault, carrying a firearm without a license, carrying a firearm on public streets or public property in Philadelphia, possessing an instrument of crime, and recklessly endangering another person. [N.T. 01/30/2013, pp. 5-11, 17-18; 01/31/2013, pp. 66-67]. On April 30, 2013, this court sentenced Defendant to a term of incarceration of five and a half to eleven years followed by two consecutive five year sentences

of probation.[1] [N.T. 04/30/2013, pp. 29-32]. On August 22, 2013, the Defendant filed a timely notice of appeal pursuant to Pa. R.A.P. § 1925(b).

In his Statement of Matters Complained of on Appeal, the Defendant challenges (1) the weight of the evidence based on witness credibility[2] and (2) the excessiveness of the sentence imposed.[3] After careful review of the entire record, this court finds no error in either assignment of error.

## II. FACTS

On March 12, 2011, at roughly 12:30pm, Philadelphia Police Officers responded to a radio call of a shooting in the Overbrook section of the city near the corner of 67th Street and Lansdowne Avenue. [N.T. 01/30/2013, pp. 21-23, 33-35, 44-45]. Several officers arrived and secured the scene outside 721 North 67th Street where nine fired cartridge casings were found on the sidewalk outside the residence. All were fired from a 9mm weapon. [N.T. 01/30/2013, pp. 58-61, 89-96]. Two other fired cartridge casings were found in a grass lot located on the 6600 block of Lansdowne Avenue. [N.T. 01/30/2013, pp. 61-65, 79-80, 93-96]. Those two fired cartridge casings were fired from a .380 caliber weapon. [N.T. 01/30/2013, pp. 93-95]. Irvin

---

[1] In his Statement of Matters Complained of on Appeal, the Defendant inadvertently refers to the sentence as five and a half to eleven years of incarceration followed by five years of probation. *See Defendant's Statement of Matters Complained of on Appeal.*

[2] At trial, several testifying officers and pieces of ballistics evidence were also presented. [N.T. 01/30/2013, pp. 21-106]. In his Statement of Matters Complained of on Appeal, the Defendant asserts only that the verdict is against the weight of the evidence and argues that eyewitness testimony was based on conjecture. [N.T. 01/31/2013, pp. 46-60]. The Defendant does not challenge the sufficiency of the evidence. As such, the facts are limited to those facts necessary to handle the weight-of-the-evidence claim and sentencing claim.

[3] The Defendant reserved other potential claims based on counsel's assertion that, as of August 20, 2013, the Notes of Testimony were not available to counsel for investigation and review. This assertion is puzzling as the Notes of Testimony have been available on the Court Reporting System (CRS) since July 31, 2013 (the notes from trial have been available since April 25, 2013).

2

Oliver, the only eyewitness available to the police, gave a description of the shooter and of the incident to the responding officers and detectives.[4]

Mr. Oliver testified that he was driving up Lansdowne Avenue toward the corner of 67th Street and Lansdowne Avenue when he saw a female, whom he described as frantic, run from the 700 block of 67th Street toward the intersection. [N.T. 01/31/2013, pp. 4-8]. Oliver then saw two males running in the same direction as the female; the males were separated by roughly thirty feet. [N.T. 01/31/2013, pp. 6-8, 9-10]. The lead male ran into the intersection, cut in front of a bus and turned up a side alley. [N.T. 01/31/2013, pp. 9-10]. The second male, identified as the Defendant, was following the first male. After the first male had cut in front of the bus and turned up the alley which was adjacent to a grass lot, Mr. Oliver saw the Defendant come to a stop at the entrance of the alley, pull a gun out of his waistband, and fire three or four times in the direction of the alley and grass lot where the first male had run. [N.T. 01/31/2013, pp. 22-25, 28-31]. Mr. Oliver could not see the first male when the Defendant fired the shots, nor was Mr. Oliver looking to see exactly where the first male was when the shots were fired. [N.T. 01/31/2013, p. 31-32, 34-35]. After firing the weapon, Mr. Oliver stated that the Defendant cocked the gun a few times, placed the weapon in his waistband and proceeded to run up an alley near Edgemore Street. [N.T. 01/31/2013, pp. 8-14].

Mr. Oliver testified that after the shooting, the Defendant ran down an alleyway near Edgemore Street. [N.T. 01/31/2013, pp. 13-17]. Mr. Oliver then turned down Edgemore Street and saw the Defendant in the adjacent alley. Mr. Oliver did not see where the Defendant went, but noticed that the police had arrived at the scene and decided to report what he had seen. [N.T. 01/31/2013, pp. 13-15].

---

[4] *See supra* note 6 and accompanying text.

3

The description which Mr. Oliver gave of the shooter matched the description of the Defendant who was observed by two patrol officers walking down 67th Street moments before the shooting was reported. [N.T. 01/30/2013, pp. 44-48]. Police knocked on the residence at 721 North 67th Street where the nine-9mm fired cartridge casings were found. [N.T. 01/30/2013, pp. 33-36]. During the interaction with a female who answered the door, two officers from the street noticed the Defendant coming down the stairs and detained him. [N.T. 01/30/2013, pp. 37]. The police secured the scene and Mr. Oliver later positively identified the Defendant as the male who was shooting toward the grass lot through which the first male had run. [N.T. 01/30/2013, p. 38]. In the basement of the home in which the Defendant was detained, police officers found a .380 weapon which was later positively identified as the weapon that fired the .380 fired cartridge casings found in the grass lot. [N.T. 01/30/2013, pp. 37-38, 93-94]. The .380 found in the residence at 721 North 67th Street was found without a firing pin. [N.T. 01/30/2013, pp. 96-99]. Testimony by Officer Stephen Ahmie from the Firearms Identification Unit later established that the firing pin in this weapon could only be removed by a person disassembling the weapon. *Id.* at 97-98.

## III.   DISCUSSION

The Defendant contends that Mr. Oliver's testimony was not credible since he did not see the first male in the grass lot when he saw the Defendant fire the shots and that such a conclusion was based on conjecture. In summary, the Defendant's contention is that any verdict would be guess work because Mr. Oliver did not see the Defendant actually remove the weapon, aim it, and fire in the direction of the first male while the first male was presumably running away. According to the Defendant, without more, any guilty verdict would be, in the classic weight-of-

4

evidence jurisprudential parlance, merely "surmise or conjecture." *Commonwealth v. Farquharson*, 467 Pa. 50, 60, 354 A.2d 545, 550 (1976). After a full and fair review of the issue presented, this court finds the claim wholly without merit.

The weight given to the evidence is wholly the province of the finder of fact "who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Hunzer*, 868 A.2d 498, 506-507 (Pa. Super. 2005). Any motion for a new trial grounded in the contention that the "verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner." *Commonwealth v. Rossetti*, 863 A.2d 1185, 1191-1192 (Pa. Super. 2004), appeal denied, 583 Pa. 689, 878 A.2d 864 (2005). The decision whether to grant a new trial on this basis rests within the discretion of the trial court. *Commonwealth v. Hunter*, 381 Pa. Super. 606, 617, 554 A.2d 550, 555 (1989). "A trial court should award a new trial on the ground that the verdict is against the weight of the evidence only when the . . . verdict is so contrary to the evidence as to shock one's sense of justice and [make] the award of a new trial [ ] imperative so that right may be given another opportunity to prevail." *Commonwealth v. Whitney*, 511 Pa. 232, 239, 512 A.2d 1152, 1155-1156 (1986). A weight-of-the-evidence claim "concedes that sufficient evidence exists to sustain the verdict but *questions which evidence is to be believed.*" *Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa.Super.2006) (quoting *Commonwealth v. Galindes*, 786 A.2d 1004, 1013 (Pa.Super.2001)) (emphasis added); such a claim only challenges how much weight should be "accorded . . . testimonial evidence." *Commonwealth v. Morgan*, 2006 PA Super 351, 913 A.2d 906, 909 (Pa. Super. Ct. 2006) (quoting *Armbruster v. Horowitz*, 744 A.2d 285, 286 (Pa. Super. 1999)).

5

The Defendant rests his challenge and corollary proffered argument on the simple premise that since Mr. Oliver did not see both the first male and the Defendant in the same visual snapshot when the Defendant fired the shots that any later conclusion that the Defendant was shooting at the first male was against the weight of the evidence. [N.T. 01/31/2013, p. 60]. This argument is without merit. Never has a trial, criminal or otherwise, rested solely on direct evidence. The law of this jurisdiction and the Rules of Evidence recognize and have long embraced a place for circumstantial evidence when reaching a verdict. *Commonwealth v. Marino*, 142 Pa. Super. 327, 334, 16 A.2d 314, 317 (1940) ("Circumstantial evidence is competent evidence and in some cases it may be more convincing than direct evidence, especially where the witnesses testifying to the latter are not deemed wholly credible."); *see also Commonwealth v. Gabriel,* 130 Pa. Super. 191, 195, 196 A. 866, 868 (1938) ("When a crime charged is sought to be sustained wholly by circumstantial evidence, the hypothesis of guilt or delinquency should flow naturally from the facts and circumstances proved, and be consistent with them all. The evidence of facts and circumstances must be such as to exclude, to a moral certainty, every hypothesis but that of guilt of the offense imputed; or in other words, the facts and circumstances must not only all be consistent with and point to the guilt of the accused, but they must be inconsistent with his innocence.").

The Defendant was found guilty of all the charges presented against him. On the top count of aggravated assault, the Defendant's actions clearly showed an "attempt to cause serious bodily injury to another." 18 PA. C.S.A. § 2702 (a)(1). The fact that Mr. Oliver did not see both the first male and the Defendant when the Defendant extracted and positioned his weapon in a straight-forward manner toward the place where one could logically infer the first male to be when the Defendant fired the shots is not an assault on the sanctity of the verdict. The evidence

6

showed the first male running in a manner which placed him in another potentially dangerous situation[5] to avoid a graver danger which was pursuing him from behind. When the first male cut up the alley adjacent to the grass lot, Mr. Oliver testified that the Defendant stopped at the entrance of the alley, extracted a weapon from his waistband, pointed the weapon in a direct manner, and fired several shots. [N.T. 01/31/2013, pp. 22-25, 28-31]. The evidence certainly and logically leads to the conclusion that the Defendant's main objective was to lay harm on the object of his pursuit, the first male. Furthermore, the Defendant's flight down the alley adjacent to Edgemore Street and the condition of the dismantled weapon[6] which the police later found both support an inference of consciousness of guilt. The testimony of Mr. Oliver was credible and sufficient to support the conclusion, beyond reasonable doubt, that the Defendant's actions were intended to lay harm on the first male on the day in question. This conclusion and the verdict were logically based on common sense inferences sufficient to eviscerate any possible conclusion that the conviction for aggravated assault was based on surmise or conjecture.[7]

The Defendant's next assignment of error is that the sentence imposed was excessive. The Defendant was found guilty of aggravated assault, simple assault, carrying a firearm without a license, carrying a firearm on public streets or public property in Philadelphia, possessing an

---

[5] Mr. Oliver stated that the first male cut in front of a bus which almost hit the first male while he was running. [N.T. 01/31/2013, pp. 9-10].

[6] Officer Patrick Kelly testified that when the weapon was found in the basement of 721 North 67th Street, the firing pin was missing. [N.T. 01/30/2013, pp. 37-38]. Officer Ahmie confirmed that the firing pin to this weapon was not in the weapon when he examined the evidence. [N.T. 01/30/2013, pp. 90-92]. Officer Ahmie also testified that the firing pin on this type of weapon could not have been separated from the weapon if the weapon had been dropped or by some other unintentional act; according to Officer Ahmie, the firing pin on this weapon could only separate from the weapon itself through a volitional sequence of steps by someone intending to remove the firing pin. *Id.*

[7] The Defendant challenges all the charges presumably based on the same theory. The Defendant essentially relies on the fact that if the aggravated assault charge cannot be maintained, then the REAP charge, the simple assault charge, and the PIC charge also fall like a house of cards, because if his argument carries the day, then no crime took place, ergo, the other charges become foundationally suspect. [N.T. 01/31/2013, pp. 57-58] (counsel stating that, in regard to the PIC charge, if one "cannot conclude beyond a reasonable doubt that he was attempting to cause serious bodily injury to someone when we don't know who the person was.").

7

instrument of crime, and recklessly endangering another person. [N.T. 01/31/2013, pp. 66-67]. After testimony was presented at the sentencing hearing and both parties presented argument to the court, this court issued a sentence of 5½ to 11 years of incarceration followed by two consecutive sentences of five years of reporting probation.

For a defendant (with a prior record score of two) convicted of the crime of aggravated assault, which carries an offense gravity score of 10, the sentencing guidelines recommend a standard range sentence of 54 to 60 months, plus or minus 12 months. 42 Pa.C.S.A. § 9721(b). In the matter *sub judice*, Defendant has not borne his burden of establishing that he received an illegal sentence, since he has made no demonstration that this court actually abused its discretion in sentencing him. The Defendant had a prior record score of two and was sentenced to a minimum of 66 months imprisonment: the applicable aggravated range of sentencing for each conviction. The sentence was within the aggravated range under the guidelines.

The Commonwealth presented two witnesses at the sentencing hearing. The first witness was Lieutenant John Walker. [N.T. 04/30/2013, pp. 4-8]. At the time of sentencing, Lt. Walker had been with the Southwest Detective Division for approximately 8 years. He testified that during that entire time period, the department was actively pursuing a group of people, roughly sixty in number, around the Lansdowne Avenue and Master Street area who were known to be members of certain groups who "were known to kill or be killed." [N.T. 04/30/2013, p. 5]. At the inception of this project to identify and target certain people who were active participants of the repetitive street violence in that area, the Defendant had not been targeted as a person of interest. [N.T. 04/30/2013, p. 6]. Around 2007-08, the Defendant became a person of interest whose name should be and was included in this target list because of his membership in one of the rival groups which plagued the locale with episodes of constant street violence. [N.T. 04/30/2013, p.

8

6]. Lt. Walker testified that, over the last 12-18 months, this insular program evolved into a collaborative effort, commonly referred to as the Gun Stat program and involved the Philadelphia Police Department, the District Attorney's Office, the Probation and Parole Department and other law enforcement agencies which would identify and monitor "individuals who are problematic in that community." [N.T. 04/30/2013, p. 7]. Monthly, this program would meet to identify those persons who should be monitored; the Defendant's name was identified, based on his background and his propensity for violence, as one of those persons.

The Commonwealth next presented Officer Michael Haas, who testified that in a period of three and a half years, he had stopped the Defendant approximately 30 to 60 times at the corner of 60th and Master Streets for investigation and arrested him at that location for narcotics. Some of the stops were made when the Defendant was with persons known to have been convicted for firearms and home invasion crimes. Based on Officer Haas' experience, the vicinity of 60th and Master Streets was a known base for "a notorious gang" which rivaled with a gang at Lansdowne Avenue and Callowhill Street. [N.T. 04/30/2013, pp. 9-10].

Sentencing is a matter vested in the sound discretion of the sentencing judge. Absent a manifest abuse of discretion, the sentence by the trial court will not be disturbed on appeal. *Commonwealth v. Anderson*, 381 Pa. Super. 1, 16, 552 A.2d 1064, 1072 (1988). For the sentence to be a manifest abuse of discretion, the sentence must be more than an error of judgment; the judgment exercised at sentencing must be manifestly unreasonable or must be a by-product of partiality, prejudice, bias or ill-will. 42 PA. C.S.A. § 9781(c); *see also Commonwealth v. Lane*, 492 Pa. 544, 549, 424 A.2d 1325, 1328 (1981). In exercising its discretion, the court must follow the general principle that the sentence imposed should call for confinement which is consistent with the protection of the public, the gravity of the offense as it

relates to the impact on the victim and the community, and the rehabilitative needs of the defendant. 42 PA. C.S.A. § 9721(b). Also relevant when determining the appropriate sentence is the character of the Defendant. *Commonwealth v. Aviles*, 295 Pa. Super. 180, 182, 441 A.2d 408, 409 (1982); *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976). Furthermore, factors such as the "defendant's character, display of remorse, defiance or indifference and the overall effect and nature of the crimes of which he was convicted" are considerations that weigh into the court's fashioning of a sentence to meet and satisfy the competing needs of both the Defendant and the public at large. *Commonwealth v. Lewis*, 2006 PA Super 314, 911 A.2d 558, 566 (Pa. Super. Ct. 2006). The court is permitted to impose a sentence that exceeds the sentencing guidelines so long as it provides a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. 42 PA. C.S.A § 9721(b). This requirement is satisfied when the judge states his reasons for the sentence on the record and in the defendant's presence. *Commonwealth v. Smith*, 369 Pa. Super. 1, 6, 534 A.2d 836, 838 (1987).

The Sentencing Guidelines, located at 204 PA. CODE § 303 *et seq.*, recommend ranges of minimum sentences based on the type of offense, the defendant's prior criminal history, and a variety of aggravating and mitigating factors. The standard recommended minimum sentence is determined by the intersection of the defendant's prior record score and the offense gravity score on the Basic Sentencing Matrix. 204 PA. CODE § 303.16. The Guidelines further recommend that if the court determines that aggravating or mitigating circumstances are present, it may impose a sentence that is a specified amount of time greater than the upper limit of the standard range or lower than the lower limit of the standard range. 204 PA. CODE § 303.13.[8]

---

[8] Additionally, long-standing precedent recognizes that 42 PA. C.S.A. § 9721 affords the sentencing court discretion to impose its sentence concurrently with or consecutively to other sentences being imposed at the same time or already imposed. *Commonwealth v. McHale*, 2007 PA Super 131, P22 (Pa. Super. Ct. 2007); *Commonwealth v. Pass*, 914 A.2d 442, 446-447 (Pa. Super. 2006); *Commonwealth v. Marts*, 889 A.2d 608 (Pa.

Furthermore, the Sentencing Guidelines are purely advisory in nature. As such, the Guidelines do nothing to alter the legal rights, duties or obligations of the defendant, the prosecutor or the sentencing court. *Commonwealth v. Sessoms*, 516 Pa. 365, 532 A.2d 775, 780-81 (Pa. 1987). The guidelines are merely one factor among many that the court must consider in imposing a sentence. *Sessoms*, 532 A.2d at 781. The only line that a sentence may not cross is the statutory maximum sentence. *See Mouzon*, 812 A.2d at 621 n.4., *Commonwealth v. Saranchak*, 544 Pa. 158, 675 A.2d 268, 277 n.17. *See also Commonwealth v. Yuhasz*, 592 Pa. 120, 923 A.2d 1111(Pa. 2007).[9]

Counsel for the Defendant argued that the court should take into account the fact that the Defendant is 22 years old when assessing the Defendant's ability to rehabilitate himself. Counsel also referred to three letters written on behalf of the Defendant and one written by the Defendant; counsel argued that the letters collectively indicated and acknowledged that the Defendant was remorseful for his actions while recognizing that the persons who wrote the letters believed that the Defendant understood the impact his conduct has had on those around him. [N.T. 04/30/2013, pp. 11-13].

This court finds the sentence appropriate given the circumstances of this case and the character of the Defendant. All told, the Defendant, at the prime, young age of twenty-two, went boldly toward a crowded intersection at noon and fired a weapon in public. The Defendant chased down, for a distance and through an intersection, the object of his actions that day. Near

---

Super. 2005) *citing Commonwealth v. Graham*, 541 Pa. 173, 184, 661 A.2d 1367, 1373 (1995); *see also Commonwealth v. Perry*, 883 A.2d 599 (Pa. Super. 2005). Any challenge to the exercise of this discretion ordinarily does not raise a substantial question. *Commonwealth v. Johnson*, 873 A.2d 704, 709 n. 2 (Pa. Super. 2005); *see also Commonwealth v. Hoag*, 445 Pa. Super. 455, 665 A.2d 1212, 1214 (1995) (explaining that a defendant is not entitled to a "volume discount" for his or her crimes).

[9] The Supreme Court has reaffirmed that the guidelines have no binding effect, created no presumption in sentencing, and did not predominate over other sentencing factors. They are valuable advisory guideposts which may provide an essential starting point and which must be respected and considered; they recommend - rather than require - a particular sentence. *Commonwealth v. Walls*, 592 Pa. 557, 926 A.2d 957 (2007).

the point where the Defendant chose to remove his weapon and expel several bullets was a public transportation vehicle and a street buzzing with traffic. All of these actions occurred in a residential neighborhood. While this court acknowledges the consensus in the statements written by those in support of the Defendant and by the Defendant himself, this court cannot turn a blind eye to the path this Defendant has traversed which led him to this sentencing. At the young age of 22 years of age—the same age counsel argues should be viewed as a factor in the Defendant's favor when this court was charged with fashioning the Defendant's sentence because the Defendant could be rehabilitated—this Defendant has been targeted as one person of focus relating to the non-stop violence in the area surrounding the Defendant. The Defendant's association in one of the gangs which necessitated the Gun Stat Program, the Defendant's 30 to 60 associations with Haas alone over a three year period vividly paint a picture that reliance solely on the Defendant's own written statement of attrition and remorse does not rest comfortably with the portrait of actions which the Defendant has shown prior to this incident and with the actions which delivered this Defendant to this court. Furthermore, the mandatory minimum sentence of 5 years, which applied in this case, limits the court's discretion in fashioning a sentence. Collectively, a sentence of 5½ to 11 years followed by two consecutive five year terms of reporting probation are within the sentencing guidelines and address the balance of competing concerns including the protection of the public, the gravity of the offense relative to the surrounding community of which the Defendant was a member, and the rehabilitative needs of the Defendant.

## IV. CONCLUSION

In summary, this court has carefully reviewed the entire record and finds no harmful, prejudicial, or reversible error and nothing to justify the granting of Defendant's request for relief in this case. For the reasons set forth above, Defendant's judgment of sentence should be affirmed.

BY THE COURT:

_____
STEVEN R. GEROFF, J.

13