J-S02011-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT EDWARD ZAGATA | : | |
| | : | |
| Appellant | : | No. 1097 MDA 2022 |

Appeal from the Judgment of Sentence Entered August 2, 2022
In the Court of Common Pleas of Schuylkill County
Criminal Division at No(s):  CP-54-CR-0001586-2021

BEFORE:  PANELLA, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED APRIL 24, 2023**

Robert Zagata appeals his judgment of sentence imposed by the Schuylkill County Court of Common Pleas after he was convicted of, among other crimes, stalking and harassment. He raises an evidentiary challenge, which we find to be without merit. However, Zagata also raises the nonwaivable claim that his harassment conviction should have merged with his stalking conviction for sentencing purposes. As we are constrained to agree, we vacate Zagata's judgment of sentence and remand to the trial court for resentencing.

As the trial court stated, "the basic facts of this case are undisputed and clear from the record." Trial Court Opinion, 9/9/2022, at 2. Shana Stefanick, a director at an inpatient drug and alcohol rehabilitation facility named the Silver Pines Treatment Center ("Silver Pines"), met Zagata when he was a

patient at Silver Pines in the summer of 2018. After Zagata was discharged, he showed up at Silver Pines looking for Stefanick, then attempted to call and text Stefanik, and subsequently wrote what can only be described as very disturbing letters to Stefanick from prison. Stefanick contacted the police, and Zagata was ultimately charged with two counts of stalking, one count of terroristic threats and two counts of harassment.

The matter proceeded to a jury trial. As an initial matter, defense counsel asked for an offer of proof regarding the testimony of Julie Brown, the records clerk at Wyoming County Correctional Facility, and Lauren Mailen, a lieutenant of the records department at Lackawanna County Prison. The Commonwealth explained that it would be presenting their testimony to establish Zagata was in prison at the respective times he sent the letters to Stefanick and to authenticate those letters. Defense counsel refused to stipulate that Zagata was in the prison when he wrote the letters, and instead objected to the testimony on the basis that it was irrelevant and unduly prejudicial. The court overruled the objection, making a specific finding that the testimony was not unduly prejudicial and noting the fact that Zagata was in jail at the time he wrote the letters was invariably going to be revealed. *See* N.T. Jury Trial, 6/14/2022, at 7. Brown then testified as to the dates Zagata was in Wyoming County Correctional Facility and Mailen testified as to the dates Zagata was in Lackawanna County Prison after he had been transferred there.

Stefanick also testified at trial. She recounted that Zagata had been a patient at Silver Pines in the summer of 2018. After he was discharged, Stefanick testified Zagata broke into Silver Pines and tried to kiss her while staff was waiting for the police to arrive. *See id.* at 28. Then, in March 2019, Stefanick received a letter from Zagata with a return address of the Lackawanna County Prison. *See id.* at 30. The letter contained profanities and vulgarities, and Zagata expressed his love for Stefanick. *See id.* at 31-32. Stefanick testified she received but refused flowers from Zagata at Silver Pines, and that after Zagata was released from Lackawanna County Prison, he again showed up at Silver Pines, but Stefanick was not there. *See id.* at 33.

Stefanick also testified Zagata attempted to call and text her, and she blocked him. *See id.* at 33-34. Zagata also contacted Stefanick's husband. *See id.* at 34.

In May 2021, Stefanick received a second letter from Zagata, this time in an envelope with a return address of Wyoming County Correctional Facility. It contained "rambling threats, curses, racist and derogatory words, lewd sexual contact, and statements indicating [Zagata] loved and was obsessed with Stefanick." Trial Court Opinion. 9/9/2022, at 3; *see also* N.T. Jury Trial, 6/14/2022, at 36-41. Stefanick testified she was "petrified," not the least because the "letter says in there, you know, he's going to beat me to death." N.T. Jury Trial, 6/14/2022, at 42.

Stefanick contacted the police as well as the Wyoming County Correctional Facility to request that Zagata be precluded from sending her more letters. Nonetheless, Stefanick received a third letter from Zagata, also with a return address of Wyoming County Correctional Facility. In the letter, Zagata again rambled and extensively used profanities and lewd language. He added that he has murdered women and children, and stated "I will bury you next to the courthouse because no one will know." *Id.* at 46.

Stefanick contacted the police. She testified she is petrified and afraid of Zagata even though she knows he is in jail, and panics that Zagata may be released. *See id.* at 47-48.

Zagata testified in his own defense. He confirmed he had been in prison for DUI and defiant trespass. He also testified he had gone to Silver Pines on the day he was released from prison, looking for Stefanick. *See id.* at 91. He agreed he had sent a letter to Stefanick from Lackawanna County Prison, *see id.* at 80, and agreed he had written the letters Stefanik had read in court, *see id.* at 86-87, 93. When asked why he would write that he was violent and murdered several women and children, he replied it was a "reverse psychology kind of thing. If something is one way, then the opposite of that would be funny." *Id.* at 96.

The jury convicted Zagata of one count of stalking, one count of terroristic threats and one count of harassment. The court sentenced Zagata to 12 to 24 months' incarceration for the stalking conviction, a concurrent

term of six to 12 months' incarceration for the terroristic threats conviction, and a consecutive 12-month probationary term for the harassment conviction. Zagata filed a timely notice of appeal. Both Zagata and the trial court complied with Pa.R.A.P. 1925 and Zagata now raises the following two issues for our consideration:

1. Did the trial court err in admitting, over objections, the testimony of Julie Brown and Lauren Mailen?

2. Did the Commonwealth fail to produce sufficient evidence to establish the commission of the crime of harassment?

Appellant's Brief at 5 (suggested answers omitted).

In his first issue, Zagata summarily argues that the court erred by admitting the testimony of Brown and Mailen because it was irrelevant and unduly prejudicial in that it was used to show his propensity to commit crimes. This claim fails.

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *See Commonwealth v. Urrutia,* 653 A.2d 706, 709 (Pa. Super. 1995). Generally, the threshold question with the admission of evidence is whether the evidence is relevant. *See Commonwealth v. DiStefano*, 236 A.3d 93, 98 (Pa. Super. 2020). Pursuant to our Rules of Evidence, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and that fact is of consequence in determining the action. *See id*.; Pa.R.E. 401. Even if evidence is relevant, however, the court can still exclude the evidence if it concludes that the probative value of

the evidence is outweighed by, among other things, a danger of unfair prejudice. **See** Pa.R.E. 403.

When evidence involves "a crime, wrong, or other act," it is inadmissible to prove a person's character in order to show that the person acted in accordance with that character. Pa.R.E. 404(b)(1). Such evidence may be admissible, however, when relevant for another purpose such as proving motive, intent, or course of conduct. **See** Pa.R.E. 404(b)(2); **_Urrutia_**, 653 A.2d at 709. It is only admissible for such a purpose in criminal cases, though, when the trial court determines that the probative value of the evidence outweighs its potential for unfair prejudice. **See _id_**. In this context, unfair prejudice means a "tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 *cmt*.

In rejecting Zagata's claim below, the trial court stated that it had properly admitted the testimony as it authenticated the letters sent by Zagata while in prison. The court continued:

> [T]he challenged testimonial evidence was relevant, admissible and necessary in order to prove that [Zagata] was the individual who authored and sent the letters to [Stefanick], thus engaging in a course of conduct prohibited by the stalking statute.

Trial Court Opinion, 9/9/2022, at 9.

The court then found that Zagata had not shown he was unfairly prejudiced by the admission of the testimony confirming the dates he was in prison. The court noted that the probative value of the testimony was high,

that Stefanick testified the letters' envelopes had a return address of either Lackawanna County Prison or Wyoming County Correctional Facility, the Commonwealth had admitted the envelopes showing the return addresses into evidence, and Zagata himself testified he sent the letters while in prison. Given these circumstances, the court found that the introduction of the limited testimony by Brown and Mailen corroborating that Zagata sent the letters from prison was more probative than prejudicial, and had been properly admitted.

The Commonwealth argues that the trial court properly found that it had not abused its discretion in admitting the challenged evidence, and in support, the Commonwealth relies on the trial court's reasoning in its opinion. Like the Commonwealth, we can discern no abuse of discretion in the trial court's conclusion that the limited testimony of Brown and Mailen was relevant and not unfairly prejudicial. Zagata's summary assertions to the contrary do not convince us otherwise. No relief is due on the basis of this claim.

In the second claim presented in his statement of questions involved, Zagata challenges the sufficiency of the evidence for his harassment conviction. However, in the argument section of his brief, Zagata argues the completely different claim that his harassment conviction should have merged with his stalking conviction for sentencing purposes. Given Zagata's failure to develop his sufficiency claim in any way, that claim is waived. *See* Pa. R.A.P. 2119(a); *Commonwealth v. Love*, 896 A.2d 1276, 1287 (Pa. Super. 2006) (stating that arguments that are not sufficiently developed are waived).

Zagata's merger claim, in contrast, goes to the legality of his sentence and cannot be waived. **See Commonwealth v. Parham**, 969 A.2d 629, 631 (Pa. Super. 2009). While his merger claim is far from well developed, and teeters on being insufficient so as to prevent our review, Zagata does cite to a case which explicitly holds that harassment is a constituent offense of stalking. **See Commonwealth v. Reese**, 725 A.2d 190, 192 (Pa. Super. 1999) (stating that "stalking is simply a more serious form of harassment"). Although not cited by Zagata, our Judicial Code provides:

> [n]o crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa. C.S.A. § 9765.

In light of **Reese**, the remaining question under Section 9765 is whether Zagata's harassment charge was based upon the same criminal act as the stalking charge. Again, Zagata does not argue that it was, but the criminal informations filed by the Commonwealth do not provide any indication that the two charges were not based on the same course of conduct. Accordingly, Zagata's harassment conviction should have merged into his stalking conviction for sentencing purposes. Because it did not, we are constrained to vacate his judgment of sentence. We remand to the trial court to resentence Zagata on his stalking and terroristic threats convictions, as our disposition upsets the sentencing court's original sentencing scheme given that the

probationary sentence for the harassment conviction ran consecutive to the sentence for the terroristic threats conviction. *See Commonwealth v. Ali*, 197 A.3d 742, 759 (Pa. Super. 2018) (stating that remanding for resentencing is appropriate where an appellate court's disposition upsets the trial court's original sentencing scheme).

Judgment of sentence vacated. Matter remanded to the trial court for resentencing in accordance with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/24/2023